[No. 56664–0.   En Banc.   December 6, 1990.]

DANIEL ROLLER, *Respondent*, v. STONEWALL INSURANCE COMPANY, *Petitioner*.

*Reed McClure Moceri Thonn & Moriarty,* by *William R. Hickman* and *Pamela A. Okano,* for petitioner.

*Robert A. Izzo,* for respondent.

GUY, J.—Respondent Roller brought a declaratory action to determine insurance coverage under an underinsured motorist claim. The trial court determined that the injuries incurred were not covered by underinsured motorist insurance and the appellate court reversed. At issue is whether the claimant was "using" the insured vehicle at the time of the incidents and whether an intentional act of a tortfeasor constitutes an "accident". We affirm the trial court and hold that there is no underinsured motorist coverage of claimant's injuries.

On December 17, 1985, Ernest Flattum drove Daniel Roller and Roller's daughter to a babysitter's home which was next door to the home of Roller's former wife, Dinell McKay. As Roller emerged from the babysitter's house, McKay came out of her house yelling obscenities. She then got into her car and deliberately rammed her car against Flattum's car then occupied by both Flattum and Roller. McKay rammed her car against the Flattum car several times until the bumpers locked. Once the bumpers were locked, Roller exited Flattum's car and went into the babysitter's house to call the police. After calling the police, Roller stood in the street to observe and to write down McKay's license plate number. Meanwhile, McKay rocked her car free and then deliberately ran down Roller in the street carrying him on the hood of her car for a short distance. Roller sustained injuries as a result of McKay's actions.

Neither McKay nor Roller carried automobile insurance. Flattum had an automobile insurance policy that included underinsured motorist coverage. Roller made claim under this coverage to the insurer, Stonewall Insurance Company, for his injuries. Stonewall denied coverage and Roller brought a declaratory action to determine coverage under Flattum's underinsured motorist policy. Both parties filed cross motions for summary judgment. The trial court granted Stonewall's summary judgment motion and denied coverage.

The Court of Appeals reversed in a split decision. *Roller v. Stonewall Ins. Co.,* 55 Wn. App. 758, 780 P.2d 278 (1989). The court held that Roller was at all times a covered passenger who was "using" Flattum's car and therefore was an "insured" under Flattum's policy. Further, the court held that all injuries were the result of "accidents" within the meaning of the insurance policy. We accepted discretionary review.

In reviewing the trial court's decision regarding a motion for summary judgment, this court must engage in the same inquiry as the trial court. *Wendle v. Farrow,* 102 Wn.2d 380, 383, 686 P.2d 480 (1984). A summary judgment may not be granted unless there is no genuine issue as to any material fact. *Wendle,* at 383. Here, there is no dispute about the facts, and coverage depends solely on the language of the insurance policy. The interpretation of insurance policy language is a question of law. *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 480, 687 P.2d 1139 (1984). Thus, we will conduct a de novo review of the trial court's decision regarding insurance coverage. *Inland Empire Distrib. Sys., Inc. v. Utilities & Transp. Comm'n,* 112 Wn.2d 278, 282, 770 P.2d 624 (1989). In construing the language of an insurance policy, the policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. *E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.,* 106 Wn.2d 901, 907, 726 P.2d 439 (1986) (citing

*Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 545 P.2d 1193 (1976)).[1]

## I

Stonewall contends that even if Roller "used" Flattum's car, there is no coverage because the policy only covered injuries caused by an "accident" involving the use of an underinsured motor vehicle. Stonewall further contends that McKay's actions were deliberate and intentional and therefore neither collision was "accidental". There is persuasive authority in other jurisdictions indicating that courts frequently withhold underinsured motorist coverage in situations where the "accident" was an intentional criminal act. *See, e.g., Alabama Farm Bur. Mut. Cas. Ins. Co. v. Mitchell,* 373 So. 2d 1129 (Ala. Civ. App. 1979); *Edwards v. State Farm Mut. Auto. Ins. Co.,* 399 N.W.2d 95 (Minn. Ct. App. 1986).[2]

Ultimately, many jurisdictions conclude, as this court does, that an intentional act cannot, by definition, be an accident. *See, e.g., Northern Ins. Co. v. Hampton,* 510 So. 2d 649 (Fla. Dist. Ct. App. 1987); *Locascio v. Atlantic Mut. Ins. Co.,* 127 A.D.2d 746, 511 N.Y.S.2d 934 (1987).

---

[1]Flattum's Stonewall policy includes underinsured motorist (UIM) coverage pursuant to the following insuring agreement:

We will pay damages for bodily injury . . . which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. Bodily injury . . . must be caused by accident and arise out of the ownership, maintenance or use of the underinsured motor vehicle.

The policy's UIM coverage defines "insured person" to include "[a]ny person using your insured car."

The insurance contract further provides:

In the event of an accident or loss, notice must be given to us promptly. The notice must give the time, place and circumstances of the accident or loss, including the names and addresses of injured persons and witnesses.

[2]In situations in which the use of the underinsured or unidentified vehicle appears to be in some way essential to the commission of the intentional tort, however, some courts are inclined to view the consequences as encompassed within the scope of the underinsured motorist coverage. 1 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 11.5, at 536 (2d ed. 1990).

This court has defined "accident" as an unusual, unexpected and unforeseen happening and has stated that

> an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual.

*Grange Ins. Co. v. Brosseau,* 113 Wn.2d 91, 96, 776 P.2d 123 (1989) (quoting *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 263–64, 579 P.2d 1015 (1978)). *See also Detweiler v. J.C. Penney Cas. Ins. Co.,* 110 Wn.2d 99, 751 P.2d 282 (1988); *McCarthy v. Motor Vehicle Accident Indemnification Corp.,* 16 A.D.2d 35, 224 N.Y.S.2d 909 (1962), *aff'd,* 12 N.Y.2d 922 (1963).[3]

The Court of Appeals determined that both of the incidents between McKay and Roller were accidents. It relied on this court's decision in *Federated Am. Ins. Co. v. Strong,* 102 Wn.2d 665, 689 P.2d 68 (1984). In *Federated,* an estranged wife used her husband's insured car to run into two other cars intentionally. The insurance company denied liability insurance coverage because the incident was not "accidental". This court held that an intentional tort, which nullifies the tortfeasor's liability insurance coverage under the terms of the policy, does not nullify the coverage of the tortfeasor's spouse who is separately insured under the same policy. *Federated,* at 674. *Federated* is distinguishable from this case, however, because Roller was attempting to gain coverage under Flattum's underinsured motorist policy for injuries caused by a third person rather than the facts presented by *Federated* in which the husband was given coverage for damages to his own car inflicted by his wife's intentional acts.

Because the Stonewall policy does not define "accident", the term must be given its popular and ordinary

---

[3]Many courts have limited this rule to deliberate acts by the insured; that is, many courts have precluded coverage resulting from torts or crimes by the insured. *See* Annot., *Coverage Under Uninsured Motorist Clause of Injury Inflicted Intentionally,* 72 A.L.R.3d 1161 (1976).

meaning. *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group,* 37 Wn. App. 621, 624, 681 P.2d 875 (1984). This court has determined that "[a] loss is 'accidental' when it happens without design, intent, or obvious motivation." *Federated,* at 674 (citing *Webster's Third New International Dictionary* 11 (1971)). On the basis of this common sense definition, this court has determined that an intentional act can never be an "accident". *Grange Ins. Co.,* 113 Wn.2d at 95. Furthermore, pursuant to the common sense definition, "accident" is not a subjective term. Thus, the perspective of the insured as opposed to the tortfeasor is not a relevant inquiry. Either an incident is an accident or it is not. McKay's intentional ramming of Roller was not an accident.[4]

█ Another persuasive argument justifying the denial of underinsured motorist coverage for intentional acts is that the purpose of the underinsured motorist statute is to permit the injured party to recover those damages he or she would have received if the tortfeasor had been insured. *Hamilton v. Farmers Ins. Co.,* 107 Wn.2d 721, 733 P.2d 213 (1987).[5] Permitting Roller to recover underinsured motorist coverage would effectively put him in a better position than he would have been in if McKay had carried liability insurance. This court has stated:

> The statutory purpose is to allow an injured party to recover those damages he or she would have received had the responsible party maintained adequate liability insurance. The injured party is not entitled to be put in a better position, by virtue of being struck by an underinsured motorist, than she would be had she been struck by a fully insured motorist.

[4]Thus, we reject the view adopted by some jurisdictions that whether an intentional act is an "accident" should be viewed from the perspective of the insured. *See Leatherby Ins. Co. v. Willoughby,* 315 So. 2d 553 (Fla. Dist. Ct. App. 1975); *Redden v. Doe,* 357 So. 2d 632 (La. Ct. App. 1978).

[5]The Washington underinsured motorist statute provides that no policy may be issued unless there is "protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom . . .". RCW 48.22.030(2).

(Citations omitted.) *Keenan v. Industrial Indem. Ins. Co.,* 108 Wn.2d 314, 320–21, 738 P.2d 270 (1987).

Stonewall reasons that if McKay had carried automobile insurance, Roller would have received no coverage for the injuries he sustained because traditional policies do not cover intentional acts by the insured. We adopt this reasoning and conclude that to provide underinsured motorist coverage to Roller would effectively place him in a better position than he would have been in if McKay had "adequate liability insurance" coverage. This conclusion is furthered by *Sayan v. United Servs. Auto. Ass'n,* 43 Wn. App. 148, 716 P.2d 895, *review denied,* 106 Wn.2d 1009 (1986). In *Sayan,* one soldier's car accidentally hit another soldier's car while on the Fort Lewis military base. The plaintiff was not "legally entitled to recover" under his underinsured motorist policy because the tortfeasor soldier was immune from suit. *Sayan,* at 156. Thus, the court did not permit the plaintiff to recover under his underinsured motorist policy because the court determined that it saw "no evidence that the Legislature intended for the victim of an uninsured motorist to receive compensation that he could not obtain even were the negligent driver in compliance with the financial responsibility statutes." *Sayan,* at 156.

In the analogous situation, because Roller would not have been legally entitled to recover from any liability insurance that McKay might have had due to the intentional nature of her act, he has no right to recover from Stonewall under the underinsured motorist provision. We affirm the trial court ruling that there is no underinsured motorist coverage of intentional torts committed with a motor vehicle.

## II

As well as denying coverage on the basis that there was no "accident", we hold that there is no underinsured motorist coverage of Roller's injuries incurred when he was no longer "using" the insured vehicle. That is, when he exited the automobile and stood in the street, he was no longer "using" the automobile.

While this court recently held that a guest passenger is "using" an insured vehicle for underinsured motorist coverage when he rides in the car, it still remains necessary to analyze whether Roller was "using" the car after he exited from Flattum's automobile. *Sears v. Grange Ins. Ass'n,* 111 Wn.2d 636, 641, 762 P.2d 1141 (1988). During the initial contact between McKay's car and Flattum's car, Roller was a passenger who was using the car. However, based on the *Sears* analysis, we hold that Roller was not "using" the car when he left the car to call the police and record the license plate number of McKay's vehicle.

In *Sears,* this court established the following criteria for determining whether a person is "using" a vehicle for purposes of underinsured motorist coverage:

> (1) [T]here must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Sears,* at 639 (quoting *Rau v. Liberty Mut. Ins. Co.,* 21 Wn. App. 326, 334, 585 P.2d 157 (1978)).

Based on the *Sears* factors, the Court of Appeals determined that Roller was using the car not only at the time of the first assault when he was sitting in the car, but also at the time McKay hit him while he was standing in the street. We disagree. To analyze coverage, the four *Sears* factors must then be applied to the second impact.

The first factor is met if there is a causal relation or connection between the injury and the use of the insured vehicle. By leaving the insured vehicle to call the police and record the necessary information for a claim, Roller was participating in an activity that arguably related to the use of the insured vehicle. In *Rau v. Liberty Mut. Ins. Co.,* 21 Wn. App. 326, 585 P.2d 157 (1978), the Court of Appeals found underinsured motorist coverage for a truck driver who was struck by an uninsured motorist when he left his

truck and crossed traffic to ask directions. The court reasoned that the driver was returning to his vehicle to use the directions to drive his truck. *Rau,* at 334–35. Thus, there must be a causal connection between the injuries and use of the insured vehicle for this court to find that an insured is "using" the insured vehicle. *Sears,* at 640.

The second factor considered mandates that the person asserting coverage be in a close physical proximity to the covered vehicle. There are a number of jurisdictions that do not find underinsured motorist coverage when an insured has left the car prior to the injury. *See, e.g., Breard v. Haynes,* 394 So. 2d 1282 (La. Ct. App.), *cert. denied,* 399 So. 2d 598 (La. 1981);[6] *Greer v. Kenilworth Ins. Co.,* 60 Ill. App. 3d 22, 376 N.E.2d 346 (1978). Although in *Rau* the court held that injuries were covered after the truck driver had left his truck, in Roller's case we need not reach the issue of proximity to the insured vehicle because Roller was not vehicle oriented or engaged in a transaction essential to the use of the vehicle at the time the injuries were incurred.

The third factor considered requires that the claimant be vehicle oriented rather than highway or sidewalk oriented at the time of the injury. *Sears,* at 639. This factor is not met by Roller because he was no longer vehicle oriented at the time McKay ran into him on the street.

The fourth factor requires that the claimant must be engaged in a transaction essential to the use of the vehicle at the time the injuries are incurred. In *Rau,* the court determined that a driver returning from across the street after asking directions was acting in a manner essential to the use of his vehicle. *Rau,* at 334. However, the *Stonewall* dissent distinguished this from *Rau* in that:

> [L]eaving a vehicle briefly to ask driving directions, as in *Rau,* has some causal relationship to the *use* of the vehicle; the

---

[6]The fact that the Louisiana court adopts this approach is of significance because this court often looks to Louisiana decisions for guidance in construing this state's underinsured motorist statute. *Hamilton v. Farmers Ins. Co.,* 107 Wn.2d 721, 729–30, 733 P.2d 213 (1987); *Elovich v. Nationwide Ins. Co.,* 104 Wn.2d 543, 550–51, 707 P.2d 1319 (1985).

driver intended, after all, to use the directions in driving to his destination. Standing on the street to write down a license number has no such connection.

*Roller,* 55 Wn. App. at 766 (Worswick, J., concurring in part, dissenting in part). Thus, we conclude Roller does not meet the fourth criterion for underinsured motorist coverage.

Because the third and fourth criteria adopted in the *Sears* opinion are not met, we hold that Roller was not "using" the insured automobile at the time the injuries were incurred after exiting the automobile. Therefore, coverage is denied.

The trial court properly denied Roller underinsured motorist coverage for the injuries he incurred when McKay intentionally rammed him with her car. The underinsured motorist policy does not cover injuries incurred by a motorist committing an intentional vehicular assault. Furthermore, we also deny coverage of Roller's injuries because he was not "using" the vehicle at the time due to the fact he was not engaged in activities essential to the use of the insured automobile. We affirm the trial court and reverse the Court of Appeals.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, and SMITH, JJ., concur.

DORE, J., concurs in the result.