[No. 12395-2-III.   Division Three.   January 25, 1994.]

MORRISON FRUIT CO., INC., *Appellant,* v. SCARLETT FRUIT CO., INC., ET AL, *Defendants,* NORTHWESTERN PACIFIC INDEMNITY COMPANY, *Respondent.*

688

*Don W. Schussler, Linda Ann Sellers,* and *Halverson & Applegate, P.S.,* for appellant.

*Thomas M. Jones, Craig H. Bennion,* and *Cozen & O'Connor,* for respondent.

COOPER, J.[*] — Morrison Fruit Company, Inc., appeals the trial court's denial of its motion for summary judgment and the subsequent dismissal of Northwestern Pacific Indemnity Company from this action. Morrison contends the refrigeration interruption endorsement to the boiler and machinery insurance policy issued by Northwestern to Scarlett Fruit Company covers damage to Morrison's apple crop during cold storage at the Scarlett facility. Northwestern cross-appeals the trial court's denial of its motion to dismiss and allowance of a second amended complaint. We reverse and remand.

---

[*]Judge Michael E. Cooper is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

FACTS

Morrison consigned its 1988 apple crop to Scarlett for storage, packing and sale. Approximately one-half of the fruit was placed into controlled atmosphere (CA) storage,[1] divided between CA rooms C and D. When the fruit was sealed into CA room D in October 1988, it met established guidelines for CA fruit. When the fruit was removed for packing and sale in April 1989, it no longer met the state standards and was downgraded.

In early 1989, during a cold spell, Scarlett noticed a slight rise of the temperature in CA room D. Efforts to correct the problem by turning down the thermostat and running an extra defrost cycle proved unsuccessful. Scarlett then discovered a fuse installed to protect the refrigeration system's defrost valve circuit had blown. The fuse was replaced and the temperature returned to its normal level.

During the same period in 1989, Scarlett also noticed a slight rise in the oxygen level in room D which was traced to the opening in the wall between CA rooms C and D through which wiring passed. The putty sealing the 2-inch hole had separated or popped out and oxygen from room C, which had been opened, leaked into room D. The oxygen level in room D quickly returned to its normal level after the hole was resealed.

Morrison attributed the softening of the apples and the subsequent downgrading of the crop to the compromised environment in CA room D caused by these two incidents. During the period in question Scarlett was insured under a boiler and machinery policy issued by Northwestern. This policy included an endorsement for refrigeration interruption. Scarlett submitted a claim for damage to the fruit stored in CA room D. By letter dated July 17, 1989, Northwestern denied coverage because the fuse associated with the motorized defrost valve performed as it was designed

---

[1]Scarlett constantly maintained its CA rooms at 30.5 degrees fahrenheit, with approximately 2 percent oxygen content and less than 1 percent carbon dioxide content.

and intended to perform, so that its opening or blowing out during a current overload was not accidental.

Meanwhile, in May 1989, Morrison filed against Scarlett a notice of intent to claim a lien under the former Perishable Agricultural Commodities Act, 1930 (PACA), 7 U.S.C. § 499. The lien claim was for $342,472.88.[2] In June 1989, Scarlett filed for chapter 11 bankruptcy. In a stipulated agreement to release cash collateral, Morrison released its PACA lien, agreed not to contest Scarlett's use of the cash collateral and released all claims except those arising out of damage to the apples stored in CA rooms C and D. The bankruptcy trustee assigned to Morrison any claims Scarlett might have against its insurers and Morrison agreed not to execute against any asset of Scarlett to satisfy those claims.

In January 1991, Morrison filed suit against Scarlett. In February, Morrison filed an amended complaint against Scarlett, The Chubb Group of Insurance Companies, and United Pacific Insurance Company. In June, Morrison filed a second amended complaint against Scarlett, Northwestern and United Pacific. By stipulation, United Pacific was dismissed with prejudice and Chubb was dismissed without prejudice. In December, Northwestern moved to dismiss on the basis Morrison had failed to obtain leave of court before amending the complaint a second time and had failed to name and serve Northwestern within its policy's 2-year limitation. Morrison moved for an order of default against Scarlett and summary declaratory judgment against Northwestern.

In January 1992, the trial court denied Northwestern's motion to dismiss and allowed the second amended complaint, nunc pro tunc. The court entered an order of default against Scarlett and a default judgment in the amount of $395,955.07[3] plus taxable costs. The trial court denied Morrison's motion for summary judgment, concluding that the

---

[2]The claim was for damage to apples in CA storage rooms C and D, but this appeal covers only the fruit in room D.

[3]The judgment covers damage to fruit stored in CA room C as well as damage to fruit stored in room D.

blown fuse was not an occurrence within policy definitions and that there was therefore no coverage. The trial court then granted summary judgment in favor of Northwestern and dismissed the company with prejudice. Morrison appeals. Northwestern cross-appeals the order denying its motion to dismiss and authorizing the filing of the second amended complaint.

## THE POLICY AND ENDORSEMENT

The Northwestern boiler and machinery policy issued to Scarlett provided coverage for damage caused by "a Covered Cause of Loss". Section A(2) of the policy provided "[a] Covered Cause of Loss is an 'accident' to an 'object' shown in the Schedule." Section F(1) provided " '[a]ccident' means a sudden and accidental breakdown of the 'object' or a part of the 'object.' " Section F(1)(g) provided "[t]he functioning of any safety or protective device" is not an "accident". The comprehensive coverage endorsement defined "object" in section A(1). Section A(2)(q) provided "object" does not mean "any object or apparatus used to initiate or maintain controlled atmosphere".

The Northwestern refrigeration interruption endorsement issued to Scarlett covered the loss of fruit or produce while under CA storage. The endorsement provided coverage for losses due to an "occurrence", which is defined in relevant part in section D(3)(a) as "[a] sudden and accidental cracking, breaking, rupturing or burning out of the pipes, pressure vessels, mechanical or electrical equipment comprising any part of the system supplying refrigeration[.]"

The boiler and machinery policy listed as a condition in section E(1)(c):

No one may bring a legal action against us under this Policy unless:
(1) There has been full compliance with all the terms of this Policy; and
(2) The action is brought within 2 years after the date of the "accident"; or
(3) We agree in writing that you have an obligation to pay for damage to Covered Property of others or until the amount of that obligation has been determined by final judgment or arbitration award. No one has the right under this Policy to bring us into an action to determine your liability.

APPEAL

Summary judgment should be granted only if there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). On review, the appellate court engages in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Here, the facts are essentially undisputed. Coverage depends solely on the language of the insurance policy, the interpretation of which is a question of law, so this court conducts a de novo review of the trial court's decision regarding insurance coverage. *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990). The policy language must be given the same fair, reasonable and sensible construction as would be given to the contract by the average person purchasing insurance. *Roller*, at 682 (citing *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986)).

DISCUSSION

It is not disputed that Scarlett's refrigeration was interrupted. It is also not disputed that the interruption resulted from a blown or burned-out fuse in the defrost valve electrical circuit. We must determine whether these events constitute a covered "occurrence" by carefully examining the terms of the policy and applying common sense. The plain language of the refrigeration interruption endorsement provides coverage for losses due to the sudden and accidental burning out of electrical equipment which results in refrigeration interruption.

Morrison contends that as long as the fuse was a part of the electrical system, and its burning out was accidental, the policy provides for coverage. Morrison argues that the unexpected and unintended power surge from an unknown source was "sudden" and "accidental" within the meaning of the policy.

Northwestern contends the efficient proximate cause of the loss incurred was not one of the defined occurrences, so the policy did not provide coverage. Northwestern argues the blown fuse was only an intermediate event and the most

likely efficient proximate cause of the refrigeration interruption was the freezing of an exposed defrost valve during a period of extreme cold, which is not an "occurrence" as the term is defined in the endorsement. Northwestern also contends that even if Morrison's position is accepted, the definition of "accident" in the main policy applies to the endorsement which does not define that term. Northwestern argues the exclusion of "[t]he functioning of any safety or protective device", such as a fuse, from the definition of "accident" keeps the occurrence from being "sudden" and "accidental".

■ ■ A threshold question is the meaning of "accidental" which is not defined in the refrigeration interruption endorsement or the main policy. Courts look to standard English language dictionaries for the meaning of undefined terms in insurance policies. *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 502, 844 P.2d 403 (1993). *Webster's Third New International Dictionary* 11 (1969) defines "accidental":

> **1:** arising from or produced by extrinsic, secondary, or additional causes : not innate, intrinsic, or of the real nature of ... **2 :** occurring sometimes with unfortunate results by chance alone **: a :** UNPREDICTABLE ... **b :** happening or ensuing without design, intent, or obvious motivation or through inattention or carelessness ....

*See also Roller*, at 685.

■ ■ Here, it is agreed that the fuse suddenly blew or burned out when an excessive surge of power flowed through the defrost valve circuit of the refrigeration system. The cause of the current overload is unknown, although it may have been the freezing of the defrost valve. In any event, the power surge was accidental: it happened without design, intent, or motivation, and was certainly unexpected and unforeseen. The refrigeration interruption was, therefore, caused by a covered "occurrence" as defined by section D(3)(a): the sudden and accidental burning out of electrical equipment comprising a part of the system supplying refrigeration — namely, a fuse.

Northwestern's improper application of the efficient proximate cause rule does not require a different outcome. The

rule permits recovery when a loss results from a covered peril which itself sets into motion a chain of events ending with an excluded peril. *See Safeco Ins. Co. of Am. v. Hirschmann*, 112 Wn.2d 621, 625-26, 773 P.2d 413 (1989); *Graham v. Public Employees Mut. Ins. Co.*, 98 Wn.2d 533, 656 P.2d 1077 (1983). The intervening excluded peril cannot be used to defeat recovery. *Safeco*, at 626.

Here, to apply the efficient proximate cause rule as argued by Northwestern would defeat the logic and purpose of *Graham* and *Safeco*, and stand the rule on its head. The power surge was not an excluded peril following a covered peril. Although the power surge caused the fuse to burn out, it is relevant only to the issue of whether that event was sudden and accidental. The burned-out fuse immediately interrupted the refrigeration system without setting into motion a chain of events ending with an excluded peril.

Nor is coverage defeated by the definition of "accident" in the boiler and machinery policy. Reading the policy and endorsement language together and harmonizing it, *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 462, 760 P.2d 337 (1988), and giving all parts of the policy and endorsement force and effect, *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 784 P.2d 507, 87 A.L.R.4th 405 (1990), we conclude the boiler and machinery policy, by its terms, has no application to the controlled atmosphere storage system. The main policy defines a covered cause of loss as an "accident" to an "object". Section A(2)(q) provides "object" does not mean "any object or apparatus used to initiate or maintain controlled atmosphere." Thus, the definition of "accident" and exclusions from that definition are irrelevant with respect to the refrigeration interruption endorsement.

Finally, common sense dictates that the whole purpose of buying a refrigeration interruption endorsement is to obtain coverage for losses which are otherwise excluded under the main policy. We conclude the refrigeration interruption endorsement purchased by Scarlett from Northwestern does

provide coverage for the loss sustained by Morrison. We reverse.[4]

## THE CROSS APPEAL

Northwestern contends Morrison stands in the shoes of Scarlett as a result of the assignment in bankruptcy; therefore, the trial court should have enforced the 2-year suit limitation of the insurance contract and granted the motion to dismiss because Morrison failed to correctly name and serve Northwestern as a defendant within the period. Moreover, to the extent Morrison was suing as a third party, Northwestern contends Morrison is barred by the provision of the policy forbidding a direct action against the insurance company. Finally, Northwestern contends the trial court improperly allowed Morrison to amend its complaint for a second time in violation of CR 15(a), which requires leave of court or written consent of the adverse party, and that the court improperly entered a nunc pro tunc order to regain jurisdiction which it had lost when the 2-year limitation period expired.

Northwestern ignores the disjunctive phrasing of the clause regarding lawsuits against it. To the extent Morrison was standing in the shoes of Scarlett, it may have been barred by the 2-year limitation period. However, by the express language of the clause it clearly could proceed with its third party claim against Northwestern after determination of Scarlett's liability. The clause does not bar Morrison's third party action; it merely provides Morrison must wait until the insured's liability for a fixed amount of damages has been established. *See Rones v. Safeco Ins. Co. of Am.*, 60 Wn. App. 496, 500-01, 804 P.2d 649 (1991), *aff'd*, 119 Wn.2d 650, 835 P.2d 1036 (1992).

If there was error, it was harmless. Northwestern was arguably brought into the suit too soon,[5] but it was not prej-

---

[4]Our determination that the cause of the refrigeration interruption was a covered occurrence does not preclude Northwestern from asserting on remand that other exclusions raised by Northwestern but not reached by the trial court because of its denial of coverage defeat recovery.

[5]Morrison's amended complaint and second amended complaint stated its claim was being brought under the Uniform Declaratory Judgments Act, RCW

udiced by the court's ruling.[6] As soon as the default judgment was entered against Scarlett, Morrison would have been free to file and serve a third party complaint against Northwestern.

Reversed and remanded.

THOMPSON, C.J., and SWEENEY, J., concur.

After modification, further reconsideration denied April 5, 1994.

Review denied at 124 Wn.2d 1030 (1994).

---

7.24, for a determination of insurance coverage. RCW 7.24.110 provides all persons who would be affected by a declaration of rights shall be made parties. The trial court did not address this argument and it has not been raised on appeal.

[6]The trial court could have granted dismissal without prejudice because Northwestern had been sued too early, but Northwestern did not seek dismissal without prejudice and it was not entitled to dismissal with prejudice.