[Nos. 16587-2-II; 16628-3-II;   Division Two.   May 11, 1994.]
15493-5-II.

STEVE HERINGLAKE, ET AL, *Individually and as*
*Guardians, Respondents*, v. STATE FARM FIRE AND
CASUALTY COMPANY, INC., *Appellant.*

VIKING INSURANCE COMPANY OF WISCONSIN,
*Respondent*, v. ANTHONY L. CLARK, ET AL, *Appellants.*

180

*William R. Hickman, Pamela A. Okano,* and *Reed Mc-Clure; Frederick D. Gentry* and *Bean & Gentry,* for State Farm.

*Daniel R. Kyler* and *Rush, Hannula & Harkins; F. Mike Shafer* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for Heringlake.

*Jerret E. Sale, Robert J. Roche,* and *Bullivant, Houser, Bailey, Pendergrass & Hoffman,* for Viking Insurance. [As amended by order of the Court of Appeals June 9, 1994.]

ALEXANDER, J. — Steve and Tracy Heringlake appeal an order of the Thurston County Superior Court granting a summary judgment to Viking Insurance Company of Wisconsin (Viking). The trial court declared that Anthony L.

Clark's insurance policy with Viking did not provide liability coverage, personal injury protection (PIP) coverage, or medical expense coverage for claims arising out of injuries the Heringlakes' son, Kyle, sustained as a result of being bitten by Clark's dog in the open bed of Clark's parked pickup truck. The Heringlakes also appeal the trial court's denial of their request for an award of attorney fees. We affirm.

In a separate appeal,[1] State Farm Fire and Casualty Company (State Farm) appeals the Pierce County Superior Court's grant of a summary judgment to Steve and Tracy Heringlake. The trial court declared in that case that the Heringlakes' insurance policy with State Farm provided underinsured/uninsured motorist (UIM) coverage and PIP coverage for Kyle Heringlake's injuries sustained as a result of the dog bite. State Farm also appeals the trial court's award of attorney fees to the Heringlakes. We reverse.

### FACTS RELEVANT TO BOTH APPEALS

In the late afternoon of August 7, 1990, Anthony Clark was performing work on Tracy Heringlake's car, which was parked near the Heringlakes' apartment in Olympia. Clark had driven to the Heringlakes' in his pickup truck, which he parked near the Heringlakes' car. Luke, Clark's large German shepherd dog, accompanied Clark to the Heringlakes', riding in the bed of the pickup truck.

After Clark arrived, Kyle Heringlake, Steve and Tracy Heringlake's 2-year-old son, began playing outside the Heringlakes' apartment. Tracy Heringlake noticed that at some point during the afternoon Kyle had wandered over to "the neighbor's". Consequently, she "walked over to the neighbor's to bring Kyle back". Tracy Heringlake claimed that she then asked Clark if she could put Kyle in the bed of his pickup truck so that Clark could keep his eye on Kyle while he worked on her car. Clark, according to Tracy Heringlake, consented.

---

[1]Although the appeals have not been formally consolidated, they present common facts and issues. Thus, we have chosen to deal with both appeals in this opinion.

Clark said that he also noted that Kyle had wandered over to a "neighbor's place". He claimed, however, that he was working on Tracy Heringlake's car when he noticed that she had placed Kyle in the bed of the pickup truck together with Luke. Clark indicated that he had leashed Luke in the bed of the pickup truck earlier that day because he wanted to start working on Tracy Heringlake's car. Before being placed in the truck, according to Clark, the dog had been "running around" with Kyle in the yard, and Kyle was "throwing [a] stick for Luke, and they were playing".

Several minutes after Tracy Heringlake placed Kyle in the bed of the pickup truck, Luke attacked Kyle and bit him on the head. Clark stated that he saw Kyle jump or fall on Luke and saw Luke suddenly "snap[ ] twice . . . right on top of" Kyle's head. As a result, Kyle suffered severe injuries to his face and head.

When asked in his deposition if he thought Luke would have attacked Kyle outside the bed of the pickup truck, Clark said "No, I don't feel he would have". Clark also observed, "I think maybe being tied in the truck like that, he [Luke] might have felt confined or something, maybe." Clark opined, "I know he [Luke] wouldn't have bit Kyle just from Kyle being in the back of that truck. There would have had to be something there."

### Procedural Facts Relative to Vikings Declaratory Judgment Action Against The Heringlakes

Following the injury to Kyle, Steve and Tracy Heringlake brought suit for damages against Clark in Thurston County Superior Court. Viking, Clark's automobile insurance carrier, then filed a separate suit in Thurston County Superior Court against both Clark and the Heringlakes, seeking a declaration that Viking had no duty to defend or pay any damages that Clark might have to pay to the Heringlakes because of Kyle's injuries.[2] Viking asserted that there was no coverage for Clark's pickup truck under the circumstances at the time of Kyle's injury because the vehicle was not

---

[2]Clark did not appear in the declaratory judgment action.

"being driven" by Clark and, alternatively, even if the vehicle was a covered vehicle, the accident causing injury to Kyle did not "arise[ ] out of the . . . use" of the vehicle. Viking also sought a declaration that there was no PIP or medical expense coverage under the policy for Kyle's injuries.

Viking moved for summary judgment, submitting a declaration from Tracy Heringlake, Clark's insurance policy, the complaint filed by the Heringlakes against Clark, and excerpts from Clark's deposition. In response to Viking's motion, the Heringlakes submitted excerpts of deposition testimony of Donna Clark (Anthony Clark's mother) and Clark.

The trial court granted Viking's motion for summary judgment, concluding that Clark's policy with Viking did not provide liability coverage for the Heringlakes' claims against Clark, nor did it provide PIP or medical expense coverage for Kyle's injuries.[3]

### PROCEDURAL FACTS RELATIVE TO THE HERINGLAKES DECLARATORY JUDGMENT ACTION AGAINST STATE FARM

Steve and Tracy Heringlake also claimed benefits under an automobile policy they had with State Farm, seeking UIM coverage and first party benefits. State Farm denied their claims, contending that Kyle's injuries did not "aris[e] out of the . . . use of an underinsured motor vehicle". The Heringlakes then commenced a declaratory judgment action in Pierce County Superior Court against State Farm. Both parties moved for summary judgment on the coverage issue. In support of its motion, State Farm submitted a copy of the Heringlakes' automobile insurance policy, a declaration from Tracy Heringlake, and excerpts from Clark's deposition. The Heringlakes submitted excerpts from Clark's deposition in support of their motion.

The trial court granted the Heringlakes' motion and denied State Farm's. It also awarded attorney fees and costs

---

[3]The Heringlakes conceded at oral argument that there is no medical expense coverage available to them under Clark's policy. We, therefore, have not addressed that issue in this opinion.

to the Heringlakes in the amount of $7,422.98. State Farm appeals both the summary judgment order and the order awarding fees and costs.[4]

SUMMARY JUDGMENT STANDARD OF REVIEW

■ Summary judgment is properly granted if the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Yakima Cy. W. Vly. Fire Protec. Dist. 12 v. Yakima*, 122 Wn.2d 371, 381, 858 P.2d 245 (1993). The reviewing court considers all the facts submitted and examines all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992). We engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

I

Analysis of Issue Relative to the Heringlakes' Appeal From Summary Judgment in Favor of Viking

The Heringlakes contend that the Thurston County Superior Court erred in concluding that because Clark's vehicle was parked and stationary, it was not "being driven" at the time Kyle was injured, and was not a covered vehicle under Clark's policy. Viking takes the opposite view, pointing to language in a broad form named driver's endorsement (endorsement) to Clark's policy that provides as follows: "We insure any *car*, owned or non-owned, being driven by *you*." Viking argues that because the pickup truck was parked and stationary, it was not "being driven by" Clark at the time Kyle was injured, and, thus, was not an insured vehicle.

■ The Heringlakes contend that the term "being driven by" is subject to two reasonable interpretations, one of which is favorable to them on the issue of coverage. If they are

---

[4]Attorney fees were awarded after the coverage issue was resolved. The order granting the judgment for fees was appealed separately from the order granting summary judgment to the Heringlakes. The appeals were, however, consolidated by previous order of this court.

correct, the policy language is ambiguous, and the pickup truck was an insured vehicle. If a clause in an insurance policy is ambiguous, the construction most favorable to the insured must be applied, even if the insurer intended a different meaning. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976).

The interpretation of an insurance policy is a question of law. *Hess v. North Pac. Ins. Co.*, 122 Wn.2d 180, 186, 859 P.2d 586 (1993); *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990); *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists. Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988). Thus, we engage in a de novo review of the trial court's decision regarding insurance coverage. *Roller*, at 682. In construing insurance policy language, the policy should be given a fair, reasonable, and sensible construction. *Roller*, at 682.

"A clause in a policy is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Baehmer v. Viking Ins. Co.*, 65 Wn. App. 301, 304, 827 P.2d 1113 (1992) (quoting *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 198, 743 P.2d 1244 (1987)). However, if policy language is clear, a court must enforce it as written and may not create an ambiguity where none exists. *Transcontinental*, 111 Wn.2d at 456. In determining whether a clause is ambiguous, a court must look at the entire contract so as to give force and effect to each clause. *Transcontinental*, at 457.

Undefined words and terms used in an insurance policy should be understood in their ordinary, plain, and popular sense. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507, 87 A.L.R.4th 405 (1990); *Federated Am. Ins. Co. v. Strong*, 102 Wn.2d 665, 670, 689 P.2d 68 (1984); *McInturff v. Dairyland Ins. Co.*, 56 Wn. App. 773, 775, 785 P.2d 843 (1990). Words should be read as the average person would read them, and no strained or forced interpretations should be given. *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986).

The Heringlakes assert that "being driven by" is ambiguous because it is subject to both a specific and a general meaning. The specific meaning, that advanced by Viking, is to physically operate a vehicle. The Heringlakes suggest another, more general meaning of "to drive" as "to own and use". *Webster's Third New International Dictionary* 692 (1986). They contend that Clark's use of the pickup truck on the day Kyle was injured falls within this definition of "being driven by".

Viking asserts that the term "being driven by" is not ambiguous, and that even if it is, when it is read in context with the rest of the policy, it is clear the endorsement, which provided Clark with an operator's policy instead of an owner's policy, does not provide coverage here.[5] According to Viking, the endorsement was intended to broaden Clark's coverage to include nonowned vehicles used by him, but only when they were being physically operated by Clark. Viking asserts that the Heringlakes' interpretation of the endorsement language would effectively reduce Clark's coverage to only those vehicles that were regularly used by Clark.[6]

We conclude that the term "being driven by" is, at the very least, ambiguous. We reach that conclusion because if the phrase is interpreted as Viking contends, absurd and unintended results could follow. For instance, if a person covered by a Viking policy exited his or her vehicle, leaving it in the middle of a roadway where it was struck by another

---

[5]Viking's standard vehicle owner's policy defines "cars we insure" as "any *car* described on the declarations page" and "other *cars you* use with the permission of the owner . . . [but not] other *cars* owned by, or furnished for the regular use of, *you* or resident members of *your* family". Clark's policy was modified by an endorsement which amended certain provisions of the basic policy, including replacing the definition of "cars we insure" with "any *car*, owned or non-owned being driven by *you*. . . .." "You" is defined in the endorsement as "the person named on the declarations page". Clark is the only person named on the declarations page.

[6]The Heringlakes surmise that this was exactly the effect the endorsement was supposed to have. Under a standard owner's policy, a person's use of owned vehicles not named in the policy or regularly used vehicles not named in the policy is not covered. The Viking endorsement provided liability coverage for any vehicles while they were "being driven by" or regularly used by Clark.

vehicle, under Viking's interpretation of its endorsement, the vehicle was not "being driven" at the time it was damaged and there would be no coverage.[7] In our judgment, an ordinary consumer reading Viking's policy could (and probably would) reasonably read the term "any car . . . being driven by" to mean "any car used".[8] An average person would expect the Viking endorsement to cover vehicles being used by the insured, not merely physically operated by the insured.

Furthermore, our interpretation of the phrase "being driven by" is consistent with Webster's Dictionary definition of "to drive" as "to own and use". In that regard, we note that other Washington cases have relied on dictionary definitions to establish an ordinary and popular meaning of a word or term contained in an insurance policy. *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 502, 844 P.2d 403 (1993) (defining "fraudulent or dishonest"); *Boeing*, at 877 (defining "damages"); *Morrison Fruit Co. v. Scarlett Fruit Co.*, 72 Wn. App. 687, 694, 865 P.2d 570 (1994) (defining "accidental") ("[c]ourts look to standard English language dictionaries for the meaning of undefined terms in insurance policies"); *Fraternal Order of Eagles, Cle Elum, Aerie 649 v. General Accident Ins. Co. of Am.*, 58 Wn. App. 243, 247, 792 P.2d 178 (defining "business"), *review denied*, 115 Wn.2d 1018 (1990); *Moritz v. St. Paul Fire & Marine Ins. Co.*, 48 Wn. App. 521, 524, 739 P.2d 731 (1987) (defining "allow"); *United Pac. Ins. Co. v. McCarthy*, 15 Wn. App. 70, 73, 546 P.2d 1226 (defining "relative"), *review denied*, 87 Wn.2d 1005 (1976).

Because we conclude that the phrase "being driven by" is ambiguous, we adopt the construction most favorable to the Heringlakes, which is that it covers vehicles being used by

---

[7]Viking responds in its brief that, in this scenario, the damages would result from the person's physical operation of the vehicle. Even that interpretation is broader than physical operation of the vehicle.

[8]We need not decide whether the Viking endorsement provides liability coverage only when the named insured is "regularly" using a vehicle, or whether it provides coverage whenever the named insured is using a vehicle. In any case, Viking has not asserted that Clark did not regularly use the pickup truck.

the insured. Under that construction, we are satisfied that the pickup truck was "being driven by" Clark, even though he was not physically operating the vehicle at the time Kyle was injured.[9] We reach that conclusion because the record shows that on August 7, 1990, Clark used the pickup truck to transport himself to the Heringlakes' residence for the purpose of performing work.

## II
### Analysis of Issue Common to Both Appeals

Viking contends, alternatively, that even if the pickup truck was a covered vehicle, *i.e.*, "being driven by" Clark, it has no liability under the policy it issued to Clark because the accident that caused bodily injury to Kyle did not arise out of the use of Clark's pickup truck. State Farm makes a similar argument that the Heringlakes' policy does not provide UIM coverage because the accident did not arise from the use of an underinsured vehicle. The two insurance companies suggest, rather, that Clark's pickup was merely the situs of the accident. The Heringlakes respond that the accident arose out of the use of Clark's vehicle.

The pertinent provisions of the insurance policies in question are as follows:

Clark's Viking Car Policy:

>     We promise to pay *damages*, within the limits of our policy, for bodily injury or property damage for which the law holds *you* responsible because of a *car accident* involving a *car* we insure. [A car accident is defined earlier in the policy as] an unexpected and unintended event that causes bodily injury or property damage and arises out of the ownership, maintenance or use of a *car* or other *motor vehicle.*

The Heringlakes' State Farm Car Policy:

>     We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle.* The *bodily injury* must be caused by accident

---

[9]Because of our conclusion that the pickup truck was an insured vehicle, we need not address the Heringlakes' further contentions that Viking's proposed interpretation of "being driven by" is inconsistent with other provisions of the insurance policy, or that it violates the provisions of Washington's Financial Responsibility Act, RCW 46.29.

arising out of the operation, maintenance or use of an *under-insured motor vehicle.*

The existence of coverage under either policy depends on the meaning of the language in these portions of the insurance policies.[10] In deciding the coverage question, we must determine whether the accident that caused Kyle's injuries, the facts of which are not in dispute, arose out of the use of Clark's pickup truck. The Washington Supreme Court has held in cases involving similar policy language that there must be some "causal connection" between the use of the vehicle and the accident to establish coverage. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 26, 593 P.2d 156 (1979). The use of the vehicle need not, however, be the proximate cause of the accident. *Transamerica*, 92 Wn.2d at 26; *Krempl v. Unigard Sec. Ins. Co.*, 69 Wn. App. 703, 707, 850 P.2d 533 (1993).

The Heringlakes rely on the 4-part test set forth in *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 641, 762 P.2d 1141 (1988) and *Rau v. Liberty Mut. Ins. Co.*, 21 Wn. App. 326, 334, 585 P.2d 157 (1978) to support their argument that the accident causing injury to Kyle arose out of the use of Clark's truck. The *Rau* test includes the following elements:

> (1) there must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

(Citations omitted.) *Rau*, at 334. We conclude that the *Rau* test is not applicable to this case. That test is applied in determining whether a *person* is using a vehicle for purposes of UIM coverage. *See Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 687, 801 P.2d 207 (1990).

---

[10]Although the relevant policy language is found in the liability portion of the Viking policy and the UIM portion of the State Farm policy, that fact is immaterial to our decision in this case. Because the policy language is nearly identical, we will apply the same analysis to both policies.

■ The fundamental question here, however, is whether the *accident* (Luke biting Kyle) arose out of the use of the vehicle. To answer that question, we must determine if "the vehicle itself or permanent attachments to the vehicle causally contributed in some way to produce the injury."[11] *Mutual of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 162, 856 P.2d 1095 (1993) (quoting *Transamerica*, 92 Wn.2d at 26); *see State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543, 543 P.2d 645 (1975), *review denied*, 87 Wn.2d 1003 (1976). The mere fact that a vehicle is the situs of an accident does not provide the causal connection necessary to establish its use. *Handley v. Oakley*, 10 Wn.2d 396, 402-03, 116 P.2d 833 (1941); *Centennial*, at 543. The accident must involve a "motoring risk" that the parties intended to cover under an automobile policy. *Centennial*, at 543; 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 11.5 cmt., at 541 (2d ed. 1990) (" 'arising out of . . . use' . . . serves both to define risks that are transferred to the insurer and to impose restrictions on the scope of insurance provided."); *cf. Kowal v. Grange Ins. Ass'n*, 110 Wn.2d 239, 244, 751 P.2d 306 (1988); *Pemco Ins. Co. v. Schlea*, 63 Wn. App. 107, 111, 817 P.2d 878 (1991).

### A

In arguing that there was no causal connection between the accident and the use of the pickup truck, Viking and State Farm rely on *Transamerica*. In that case, a driver of an automobile was injured when a shotgun that a passenger removed from a gunrack in the motor vehicle accidentally discharged. The *Transamerica* court, applying the causal

---

[11]Although the first element of the *Rau* test appears, at first glance, to be the same test as the causal connection test cited in *Transamerica*, at 26, that is not the case. The major difference between the tests appears to be that physical involvement is stressed by cases such as *Jerome*, at 163-64, and *Transamerica*, at 26, while cases such as *Rau*, at 327-34, and *Roller*, at 687-88, found the causal relation test met when a person was returning to a vehicle from another location. We conclude that element one of the *Rau* test contemplates a more broad causal relation than the one required to establish that an accident arises out of the use of a vehicle. That must be the case, because the mere fact that a person uses a vehicle, and, therefore, qualifies as an insured person, does not establish that the accident arises out of the use of the vehicle.

connection test from *Handley*, 10 Wn.2d at 402-03 (boy hit by baseball while standing beside an ice cream truck; court held that no causal connection existed between use of truck and the accident) and *Centennial*, held that injuries sustained by the driver arose out of the use of the vehicle because the gun discharged after the trigger of the gun came into contact with a permanent attachment to the vehicle (the rear bracket of the gunrack) and that this contact causally contributed in some way to produce the accident that injured the driver.

In reaching its decision, the Supreme Court contrasted the scenario it was confronting in *Transamerica* with the facts in *Centennial*, a case from this division. In *Centennial*, the driver was injured when a gun accidentally discharged in a moving car as a passenger attempted to unload it. We held in *Centennial* that there was no coverage because the vehicle was merely the situs of the accident, the vehicle not having contributed in any fashion toward producing the injury, and the gun not having come in contact with any part of the vehicle.

Our Supreme Court's most recent decision on whether an accident arose out of the use of a vehicle is *Jerome*. There, the court held that injuries that occurred when a passenger attempted, unsuccessfully, to throw a firecracker from the window of a moving vehicle did not arise from the use of the vehicle. In so ruling, the court observed that the vehicle did not contribute to the accident or the injuries because the window was rolled down and no part of the car or any of its permanent attachments came into contact with the thrower's arm.

In light of the instant facts and the principles set forth in the cases summarized above, we conclude that the accident that caused injury to Kyle Heringlake did not arise out of the use of a motor vehicle. We reach that conclusion because nothing about the truck or any permanent attachment causally contributed to Luke's biting Kyle.

Although the Heringlakes argue that the fact that Luke was tied to the truck establishes a connection with the

vehicle, there is no suggestion or inference that the dog's connection to the truck by a leash contributed to the incident in any way. The undisputed facts are that Luke was in the bed of the truck, Kyle jumped on Luke, and Luke bit Kyle. The fact that the dog was leashed to the vehicle does not appear to have causally contributed to the accident any more than the fact that the passenger in *Centennial* was sitting in the car causally contributed to the discharge of the gun. Under these facts it is apparent that the event could have happened whether or not the dog had been leashed, the truck merely happening to be the situs of the accident.

The Heringlakes point to several factors that they suggest establish a causal connection between the use of the vehicle and the accident. They note that Luke was frequently transported in Clark's pickup truck, Clark kept food, water, and a blanket in the truck for Luke, and Clark considered Luke security for the truck. Even accepting those facts, they have no bearing on the result. In our judgment, whether there is a causal connection between the use of the vehicle and the accident does not depend on the frequency with which the use occurs, the type of use, or whether the vehicle is in motion or stationary. Rather, it depends on whether physical contact or involvement with the vehicle or its attachments causally contributed to the accident. *See Transamerica*, at 26.

The Heringlakes further rely on Clark's deposition testimony to establish causal connection between the vehicle and accident. Although Clark suggested "I think maybe being tied in the truck like that, he [Luke] might have felt confined or something, maybe", this is mere speculation. The Heringlakes point to no evidence to support Clark's bald assertion. Mere speculation cannot support or defeat a motion for summary judgment. *Kyreacos v. Smith*, 89 Wn.2d 425, 429, 572 P.2d 723 (1977). Clark also stated in his deposition that "I know he [Luke] wouldn't have bit Kyle just from Kyle being in the back of that truck. There would have had to be something there." The record indicates that the

"something" was Kyle's jumping on Luke, not the vehicle or a permanent attachment to the vehicle.

Our decision finds support in a case from another jurisdiction that has addressed a dog bite injury occurring in a motor vehicle. In *Alvarino v. Allstate Ins. Co.*, 370 Pa. Super. 563, 537 A.2d 18 (1988), the Pennsylvania Superior Court rejected a claim that a dog bite injury arose out of the use of a motor vehicle. In that case, a child climbed into a van while the van was stopped at an intersection, and was bitten by a dog located in the van. The court held that the accident did not arise out of the use of a motor vehicle because nothing about the vehicle contributed in any way to cause the child's injuries. While the Heringlakes attempt to distinguish *Alvarino* by claiming that the Pennsylvania court used a different causal connection test than Washington's, the tests appear to us to be similar: whether the vehicle causally contributed in some way to the accident or whether the vehicle was merely the situs to an accident that arose from outside or external forces. *Alvarino*, at 567-68; *Jerome*, 122 Wn.2d at 162-63.[12] The only difference between the facts in *Alvarino* and the facts here is that in *Alvarino* the dog was not leashed. Although Luke was leashed, that fact, as we have observed, is immaterial.

## B

Because we conclude that there was no causal connection, the vehicle not contributing in any way toward the accident, we need not address whether the use of the vehicle to keep a dog and child confined is one of the motoring risks covered by

---

[12]*But see National Indem. Co. v. Corbo*, 248 So. 2d 238 (Fla. Dist. Ct. App. 1971); *Hartford Accident & Indem. Co. v. Civil Serv. Employees Ins. Co.*, 33 Cal. App. 3d 26, 31-32, 108 Cal. Rptr. 737, 741 (1973); *Transamerica v. Farmers Ins. Exch.*, 463 N.W.2d 641 (N.D. 1990); *Farmers Ins. Co. v. Till*, 170 Ariz. 429, 825 P.2d 954 (Ct. App. 1991), *review denied* (Mar. 17, 1992).

These cases are distinguishable either on their facts or the law. In *Corbo* and *Hartford*, the courts relied primarily on an analysis of the nature of the risk and found that transporting animals was an appropriate use. We do not reach that question because of the lack of a causal connection. In *Farmers*, the North Dakota court appeared to apply a different version of the causal connection test referring to the inherent nature of an automobile. Finally, in *Till*, the court relied on the vehicle owner's failure to properly use the vehicle's features to separate the dog from a passenger. That is not a relevant issue here.

either the State Farm or Viking policy. We note, however, that in several cases coverage has been rejected on the grounds that, although the use of the vehicle appears to have contributed to the accident, the use was not a reasonable or natural one, and was, therefore, outside the scope of the motoring risks covered by an insurance policy. *See Schlea*, at 111; *Centennial*, at 544.

## III

### Analysis of Other Issues Relative to the Heringlakes' Appeal From Summary Judgment in Favor of Viking

A. Personal Injury Protection Payments.

The Heringlakes contend that Kyle should be covered under Clark's policy's PIP provisions. They assert that Clark's policy provides PIP payments to any injured person and that Kyle qualifies as an injured person. Viking asserts that PIP coverage applies only if the person is injured while occupying an insured automobile. Because, it argues, the truck is not an "insured automobile" (because it was not "being driven by" Clark), Kyle does not qualify for PIP benefits as an injured person.

Clark's policy provides PIP benefits as follows:

[F]or loss and expense incurred because of bodily injury caused by accident and arising out of the ownership, maintenance or use of an automobile [Viking will provide]:

(a) medical and hospital benefits to or on behalf of each injured person;

. . . .

[which includes] any person . . . who sustains bodily injury caused by accident (1) while occupying the insured automobile as a guest passenger, or (2) while using the insured automobile with the permission of the named insured . . ..

Given our conclusion above that the term "being driven by" is broad enough to cover the pickup truck when it was parked and stationary, Clark's vehicle was an insured automobile. Therefore, Kyle satisfies the policy definition of an "injured person". Nevertheless, the Heringlakes are not entitled to PIP benefits because the policy language provides that benefits will only be provided if the injuries were

caused by a car accident and arose out of the use of the vehicle. Because Kyle's injuries did not arise out of the use of Clark's vehicle, we conclude that no PIP benefits are provided by the Viking policy.

## B. Attorney Fees.

■ The Heringlakes contend that they are entitled to recover attorney fees for the trial and appeal under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Although we concluded that Clark's pickup truck was an insured automobile, the Heringlakes have failed to establish any coverage for Kyle's injuries under the liability or PIP provisions of Clark's policy. Therefore, we affirm the trial court's decision denying them attorney fees and conclude, in addition, that they are not entitled to fees on appeal.

### IV

Analysis of Other Issues Relative to State Farm's Appeal
From Summary Judgment in Favor of the Heringlakes

## A. First Party Medical Expense Benefits[13]

State Farm contends that the trial court erred in permitting the Heringlakes to recover first party medical expense benefits. State Farm asserts that even if Kyle's injuries from the dog bite arose out of the use of the vehicle, the policy language of the first party benefits provision is different from the UIM provision and, therefore, no benefits are provided. The Heringlakes contend that Kyle was using an underinsured vehicle when he was injured and is, therefore, entitled to medical expense payments under the State Farm policy.

The Heringlakes' policy with State Farm provides as follows: "We will pay for *bodily injury* to an *insured* caused by accident resulting from the maintenance or use of a *motor vehicle* as a motor vehicle: . . . 1. Medical Expenses."

Because we have concluded that Kyle's injuries did not result from the use of an underinsured vehicle, we hold that

---

[13]The trial court referred to this portion of the State Farm policy as PIP coverage.

the Heringlakes are precluded from claiming first party medical expense benefits. Kyle's injuries were not caused by an accident resulting from the use of a motor vehicle as a motor vehicle.[14]

We, therefore, need not address State Farm's arguments that the inclusion of the term "as a motor vehicle" restricts coverage more under the first party benefits provisions of the policy than under the UIM provisions.

## B. Attorney Fees.

Finally, State Farm contends that the trial court erred in awarding attorney fees to the Heringlakes pursuant to *Olympic S.S.* State Farm asserts that even if coverage is upheld, attorney fees are unwarranted because of the absence of a supplementary payment clause in the Heringlakes' policy.

We think it is obvious that one is entitled to fees under *Olympic S.S.*, only if the party seeking fees prevails on some claim. Because we have concluded that no coverage exists under the Heringlakes' policy, the Heringlakes are not entitled to recover attorney fees either at trial or on appeal. Therefore, we reverse the trial court's award of fees, and find an award of fees on appeal unwarranted.

## V
## Conclusion

In conclusion, we affirm the Thurston County Superior Court's order of summary judgment in favor of Viking on the issue of liability coverage because the accident did not arise out of the use of the vehicle. We reverse the Pierce County Superior Court's order of summary judgment in favor of the Heringlakes on the same grounds and remand to the trial court for entry of summary judgment in favor of State Farm.

MORGAN, C.J., and SEINFELD, J., concur.

Review denied at 125 Wn. 2d 1003 (1994).

---

[14]The Heringlakes have not argued that the term "resulting from" has a different meaning than "arising from".