[No. 15702-1-II.    Division Two.    September 8, 1994.]

MID-CENTURY INSURANCE COMPANY, *Respondent,* v.
CHRISTINE E. HENAULT, *Appellant.*

*Peter Kram* and *Leggett & Kram,* for appellant.

*Timothy R. Gosselin* and *Burgess, Fitzer, Leighton & Phillips, P.S.,* for respondent.

ALEXANDER, J. — Christine Henault appeals an order of the Pierce County Superior Court granting summary judgment to Mid-Century Insurance Company (Mid-Century), declaring that Henault had no coverage under a policy issued to her by Mid-Century for injuries she sustained after being thrown from her motorcycle. We reverse.

On March 21, 1990, Christine Henault was riding her motorcycle east on 27th Street West in Tacoma. As she proceeded through the intersection of 27th Street and Sunset Drive, a vehicle driven by Jack Curry turned in front of her and struck her motorcycle. Henault was thrown from her motorcycle and landed on the pavement in the westbound lanes of 27th Street.

Soon after Henault was thrown from her motorcycle, Angela Butler, who was driving her vehicle westbound in the left lane of 27th Street, observed "something in the road". She could not immediately identify the object, but as she drove closer, she "could see the broken glass and . . . saw Christine [Henault] lying there". Butler stopped her vehicle.

As Butler was stopping, she noticed another vehicle, a truck, following her in the left lane. The truck, which was driven by Tobias Benton, "changed lanes into the right-hand lane" in order to pass Butler's vehicle. A "split-second later [Benton] noticed there was something laying in the roadway that was in [his] lane." Benton attempted to avoid the object in the roadway, but was unsuccessful. Benton's truck struck Henault as she lay in the roadway.[1]

At the time of the accident, Henault did not have insurance coverage for her motorcycle. She did, however, have an insurance policy with Mid-Century covering a pickup truck that was owned by her. The Mid-Century policy included uninsured/underinsured motorist (UIM) as well as personal injury protection (PIP) coverage.

The UIM coverage provided that Mid-Century would "pay all sums which an uninsured person is legally entitled to recover as damages from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by the insured person." (Italics omitted.) The policy provided, however, that there was no UIM coverage for bodily injury that the insured sustained while occupying an uninsured motor vehicle owned by that person. PIP coverage was provided "for bodily injury to each insured person caused by a motor vehicle accident." (Italics omitted.)

Henault sought damages from Curry and eventually settled with him for $25,000, the limit of his automobile liability policy. The amount she received from Curry was, however, less than the amount she claimed as the full extent of her damages due to the accident.[2] Consequently, she filed a claim with Mid-Century in an effort to recover under the UIM provisions of her automobile liability policy the differ-

---

[1]Butler, who witnessed the collision, observed that "when the truck hit her [Henault] it was almost like she was a doll, it just kind of bounced her body, and then she just fell back down. . . . [H]e swerved [and] hit the top part of her head and bounced her up and she fell back down."

[2]Henault claims that her physical injuries included "[b]roken bones, cuts, contusions, abrasions, scarring and concussive injury to the head, body and extremities" as well as "partial paralysis and loss of the use of her limbs and extremities".

ence between what she received from Curry and the full extent of the damages she sustained as a result of injuries she suffered as a result of being struck by Benton. She also attempted to recover under the PIP provision of her policy with that company. Mid-Century denied her claims. The record does not reflect whether Henault attempted to obtain a recovery from Benton or what the limits of his insurance coverage, if any, are.

Henault demanded that her UIM claim be arbitrated pursuant to the terms of her policy with Mid-Century, presumably alleging that Benton was an underinsured motorist. Mid-Century responded by filing a complaint for declaratory judgment against Henault in Pierce County Superior Court. Mid-Century sought a declaration that it had no duty to arbitrate because Henault was not covered under the UIM or PIP provisions of her policy with Mid-Century for the injuries she sustained as a result of the March 21, 1990, incident.

Mid-Century then moved for summary judgment. The trial court granted Mid-Century's motion, concluding that there was no coverage and, thus, Mid-Century had no duty to enter into arbitration with Henault.

Henault appeals, contending that the trial court erred in granting Mid-Century's motion for summary judgment which precluded her from recovering for the injuries she sustained as a result of being struck by Benton. Specifically, she claims that the provision in her policy excluding coverage "[w]hile occupying" an uninsured motor vehicle "owned" by her does not serve to bar her claim because she was not, she asserts, occupying her uninsured motorcycle at the time she was struck by Benton.[3] She contends, therefore, that she is covered under the UIM provisions of her policy to the degree Benton's insurance proceeds would not fully compensate her for the injuries she sustained as a proximate result of his negligence.

---

[3]Henault concedes that she was occupying her motorcycle when she was struck by Curry and, thus, was not covered under her Mid-Century policy for any injuries she sustained as a result of that impact.

■ In reviewing summary judgment, we take the position of the trial court and review questions of law de novo. *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993). The Washington Supreme Court recently reiterated the rules governing review of summary judgment in *Higgins v. Stafford*, 123 Wn.2d 160, 168-69, 866 P.2d 31 (1994) (quoting *Peterick v. State*, 22 Wn. App. 163, 180-81, 589 P.2d 250 (1977), *review denied*, 90 Wn.2d 1024 (1978)):

> A motion for summary judgment may be granted only if, "after viewing all the pleadings, affidavits, depositions, admissions and all reasonable inferences drawn therefrom in favor of the nonmoving party", the trial court finds, "(1) that there is no genuine issue as to any material fact, (2) that all reasonable persons could reach only one conclusion, and (3) that the moving party is entitled to judgment as a matter of law".

■ The fundamental issue we are confronted with here is whether the UIM provisions of Henault's policy with Mid-Century provide her with coverage for the injuries she sustained as a result of being struck by Benton's vehicle after she was struck by Curry and thrown from her motorcycle to the pavement. In analyzing this issue, we engage in a de novo review of the insurance policy in question because interpretation of an insurance policy is a question of law. *Hess v. North Pac. Ins. Co.*, 122 Wn.2d 180, 186, 859 P.2d 586 (1993); *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990).

■ In construing language in an insurance policy, the policy should be given a fair, reasonable, and sensible construction. *Roller*, at 682. If policy language is clear, a court must enforce it as written and may not create an ambiguity where none exists. *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists. Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988). An exclusionary clause is strictly construed against the insurer. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 68, 659 P.2d 509 (1983), *modified on reconsideration*, 101 Wn.2d 830, 683 P.2d 186 (1984).

■ On the other hand, if policy language is ambiguous, it must be interpreted against the drafter. *American Star Ins. Co. v. Grice*, 121 Wn.2d 869, 875, 854 P.2d 622 (1993), *opinion supplemented*, 123 Wn.2d 131, 865 P.2d 507 (1994). To

determine whether a clause is clear or ambiguous, a court must look at the entire contract so as to give force and effect to each clause. *Transcontinental*, 111 Wn.2d at 456-57. "A clause in a policy is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Baehmer v. Viking Ins. Co.*, 65 Wn. App. 301, 304, 827 P.2d 1113 (1992) (quoting *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 198, 743 P.2d 1244 (1987)).

## UIM COVERAGE

To resolve the question of whether Henault's policy provides her with coverage, we direct our attention to exclusion (3)(a) of the UIM provisions of her policy. The section provides:

> 3. This coverage does not apply to **bodily injury** sustained by a person:
>
>> a. While **occupying a motor vehicle** owned or available for regular use by you or a **family member** for which insurance is not afforded under the Liability coverage of this policy.

The term "occupying" is defined in Henault's policy as "in, on, getting into or out of".

Mid-Century contends that exclusion (3)(a) defeats Henault's claim that she was covered under the UIM provisions of her policy with Mid-Century for any injuries she sustained as a result of being struck by Benton. Although Mid-Century concedes that Henault was not physically on the uninsured motorcycle when she was struck by Benton's automobile, it argues that she was "occupying" the vehicle at the time of that impact. The insurer emphasizes the "uninterrupted sequence of events, the absence of any indication that Ms. Henault intended to change her status from motorcycle rider to 'pedestrian', and the fact that the second accident only occurred because of the first [impact]" caused by Curry.

Mid-Century relies on our decision in *Farmers Ins. Co. v. Clure*, 41 Wn. App. 212, 702 P.2d 1247 (1985). In *Clure*, the insured was injured when he was struck by an uninsured

motorist, and thrown from an uninsured motorcycle. "As a result of the impact with the ground", the motorcyclist sustained severe injuries. *Clure*, 41 Wn. App. at 214. As here, the UIM provisions of the policy at issue in *Clure* excluded coverage for bodily injury sustained "[w]hile occupying a motor vehicle owned by you or a family member for which insurance is not afforded under this policy . . .". *Clure*, at 214. The policy also had a provision similar to the Mid-Century policy which provided that "[o]ccupy means in, on, getting into or out of". *Clure*, at 214.

We held in *Clure* that "all of [the insured's] injuries flowing from his occupancy of the motorcycle were excluded from uninsured motorist" coverage. *Clure*, at 216. We stated that the insurance policy excluded coverage for "injuries sustained when thrown from a vehicle during a collision." *Clure*, at 217. Mid-Century contends that *Clure* should be extended to apply here and that we should hold that UIM coverage was not available to Henault under the policy.

In our judgment, the reach of the *Clure* decision should not be so great. In that case, all of the injuries for which the insured sought coverage were sustained when the insured was physically located on the motorcycle or when he came into contact with the roadway immediately after being thrown from the motorcycle. Here, the injuries for which Henault seeks coverage under the UIM provisions of her policy were sustained when she was struck by Benton as she lay on the pavement. At that point the momentum from the impact which had thrown her from her motorcycle had ceased.

We thus decline Mid-Century's invitation to extend *Clure* in this case. As a general rule, we interpret insurance contracts strictly against the insurer. *Clure*, at 215. The Mid-Century policy, as we have noted above, unambiguously defines "occupying" as "in, on, getting into or out of". The policy does not distinguish between a person getting out of a vehicle voluntarily and one who does so involuntarily. In our judgment, when a person completes the process of leaving an uninsured motorcycle he or she is no longer in, on, or

getting out of that vehicle and, thus, is no longer "occupying" it.

The process of involuntarily getting out of a motorcycle necessarily and directly includes contact with another object, often the ground. "[E]xclusions for 'occupying' a . . . motorcycle are intended to relate to injuries sustained in an accident which *directly* result from being 'in, on, getting into or out of' a . . . motorcycle." (Italics ours.) *Clure*, at 215-16. An injury that one sustains as a result of contacting the ground after being thrown from a vehicle during a collision directly flows from the occupancy of that vehicle and there is no coverage for such injuries. *Clure*, at 216. On the other hand, an injury that one sustains *after* contacting the road surface and after the momentum from the force that propelled the person from the vehicle has ceased can come from any source. It does not directly flow from the occupancy of the vehicle.

The language of the UIM provision excludes coverage only for injuries that occur "[w]hile occupying" an uninsured motor vehicle. It does not exclude coverage for bodily injury arising from, resulting from, or proximately caused by the use of a vehicle. Although we recognize that a person who has been thrown from a vehicle and onto the roadway would not be in that position had he or she not been involved in an accident while occupying the vehicle, that fact is immaterial for the purposes of interpreting the contract terms "[w]hile occupying". In our judgment, a person lying on the road because of an accident is no more, and no less, "occupying" a motorcycle than if, after voluntarily getting off the motorcycle, he or she slipped and fell onto the road surface. Whether that person had been "using" the motorcycle, and whether events after the initiation of the accident were interrupted or not are wholly separate questions. *See Roller*, 115 Wn.2d at 686-89; *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 638, 762 P.2d 1141 (1988).

The record clearly indicates that the momentum from the initial impact that propelled Henault from her motorcycle had terminated when she was struck by Benton. Indeed,

Henault was lying in the roadway for a sufficient amount of time to permit Butler to see her as she was approaching, and for Benton to swerve around Butler and strike Henault. Although the witnesses to the incident did not specify the amount of time all of these events took, it is apparent that Henault was not struck immediately after she hit the road. Given the fact that Henault had completely left her motorcycle and her momentum from the traumatic departure from that motor vehicle had ended before she was struck by Benton, we are satisfied that she was no longer "occupying" her motorcycle when she was struck by the vehicle driven by Benton.

### PIP COVERAGE

Henault also contends that the trial court erred in granting a summary judgment dismissing her claim that the PIP provisions of the Mid-Century policy provide coverage for her injuries. Mid-Century disagrees, pointing to exclusion 3 in part III of the PIP provisions of the policy,[4] which states:

> We will not pay for injury to any person:
>
> . . . .
>
> e.   arising out of the ownership, maintenance or use of any motorized vehicle with less than four wheels.

██  We agree with Mid-Century that this provision bars Henault from obtaining PIP coverage. When Henault was injured, she had been riding her motorcycle, which had, of course, fewer than four wheels. Unlike the "occupying" language we have discussed above, the PIP provisions contain "arising out of" language, which means the existence of a "causal connection" between the vehicle and the injury. *Heringlake v. State Farm Fire & Cas. Co.*, 74 Wn. App. 179, 189, 872 P.2d 539 (1994). Because the injuries that Henault sustained as a result of being thrown from her motorcycle were causally connected to her use of her motorcycle, the exclu-

---

[4]Mid-Century also relies on an exclusion in the PIP provisions similar to the one in the UIM portion of the policy regarding injuries sustained while "occupying" certain motor vehicles. Because we have rejected the applicability of that exclusion above, we need not address it again.

sion in the PIP portion of Henault's policy precludes her from receiving PIP coverage.

We reverse the trial court's grant of a summary judgment to Mid-Century on the UIM coverage claim. We affirm the summary judgment on the claim for PIP coverage.

SEINFELD, A.C.J., and HOUGHTON, J., concur.

Review granted at 126 Wn.2d 1001 (1995).