[No. 62259-1.   En Banc.   November 16, 1995.]

MID-CENTURY INSURANCE COMPANY, *Petitioner*, v. CHRISTINE E. HENAULT, *Respondent*.

208

*Burgess, Fitzer, Leighton & Phillips, P.S.*, by *Timothy R. Gosselin*, for petitioner.

*Leggett & Kram*, by *Peter Kram*, for respondent.

PEKELIS, J. — Mid-Century Insurance Company (Mid-Century) appeals from a court of appeals decision reversing a trial court's order in which it granted summary judgment to Mid-Century on the basis that Christine Henault (Henault) was not covered under the uninsured or underinsured motorist (UIM) provisions of her Mid-Century automobile insurance policy (the policy). Henault sustained injuries when she was struck by an uninsured/underinsured motorist as she lay in the roadway after having been ejected from her uninsured motorcycle in an earlier collision. Mid-Century contends that the policy's "owned-vehicle" exclusion applies to preclude coverage in this case. Under this exclusion, no UIM coverage is provided for injuries sustained "[w]hile occupying" an uninsured motor vehicle "owned" by the insured. We therefore must decide whether Henault was "occupying" her uninsured motorcycle at the time of the second impact involving the uninsured motorist. We hold that Henault was not and affirm the court of appeals.

On a March evening in 1990, Henault was riding her motorcycle eastbound on a four-lane street when Jack Curry (Curry) failed to yield the right-of-way at an intersection and struck her motorcycle with his vehicle. Henault, who was a wearing a helmet, was thrown from her motorcycle, landing in the inside westbound lane. Soon after, Angela Butler (Butler), who was driving in the outside westbound lane, arrived at the scene. She initially slowed when she noticed something lying in the road and then stopped upon realizing that it was a person. Tobias Benton (Benton), who was driving a truck directly behind Butler, moved to the inside westbound lane to pass Butler as she slowed. A "split-second" later, Benton noticed something lying in the lane. Although Benton slowed and swerved to avoid it, his front tires struck Henault's head. Butler, who witnessed the impact through her mirror, saw the upper portion of Henault's body bounce "several inches off the ground" when she was struck. Benton apparently was uninsured or underinsured.[1]

Henault later obtained the full limits of Curry's automobile insurance policy for damages that she incurred in the accident. This amount, however, was less than the full amount of Henault's claimed damages. Henault, who had not purchased insurance for her motorcycle, then filed a claim with Mid-Century, seeking the limits of an insurance policy she had purchased for her pickup truck. She specifically sought coverage under the UIM and personal injury protection (PIP) provisions of the policy.

As to UIM coverage, the policy provided that Mid-Century would "pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by the insured person." Clerk's Papers at 14 (emphasis omitted.) The policy also contained what is commonly referred to as an "owned-vehicle" exclu-

---

[1] The parties assume that this was Benton's status. Although we are unable to find support for this in the record, we will assume that he was uninsured for the purposes of this opinion.

sion. This exclusion precluded UIM coverage for bodily injury sustained

> [w]hile occupying a motor vehicle owned or available for regular use by you . . . for which insurance is not afforded under the Liability coverage of this policy.

Clerk's Papers at 15 (emphasis omitted.) The policy specifically defined "occupying" as "in, on, getting into or out of" a motor vehicle. Clerk's Papers at 13.

As to PIP coverage, the policy provided that Mid-Century would pay certain benefits for bodily injury caused by a motor vehicle accident. The policy provided, however, that coverage was excluded for bodily injury "arising out of the ownership, maintenance or use of any motorized vehicle with less than four wheels." Clerk's Papers at 16.

Pursuant to the terms of the policy, Henault requested that her claim be arbitrated. Mid-Century responded by filing a declaratory judgment action in which it sought an order that Henault was "occupying" her motorcycle at the time of the second impact and therefore she was not covered under the policy.

On October 22, 1991, Mid-Century moved for summary judgment, arguing that Henault was not covered under either the PIP or UIM provisions of the policy. The trial court agreed and entered summary judgment for Mid-Century.

The court of appeals affirmed the trial court's order as to PIP coverage, but reversed as to UIM coverage. *Mid-Century Ins. Co. v. Henault*, 75 Wn. App. 733, 879 P.2d 994 (1994). In concluding that summary judgment had been improperly granted on the issue of UIM coverage, the court held that the owned-vehicle exclusion did not apply because Henault was not "occupying" her motorcycle when she was struck by Benton. The court found that the term "occupying" was unambiguous and reasoned that:

> [t]he policy does not distinguish between a person getting out

of a vehicle voluntarily and one who does so involuntarily. In our judgment, when a person completes the process of leaving an uninsured motorcycle he or she is no longer in, on, or getting out of that vehicle and, thus, is no longer "occupying" it.

*Henault,* 75 Wn. App. at 739-40.

Thus, the issue presented in this case is whether under the "owned vehicle" exclusion an insured is "occupying" an owned uninsured vehicle when she has been ejected from it and then is struck later by an uninsured motorist while still lying in the roadway.

■ The interpretation of insurance policy language is a question of law and therefore we review de novo a trial court's summary judgment determination regarding insurance coverage. *Mutual of Enumclaw Ins. Co. v. Jerome,* 122 Wn.2d 157, 160, 856 P.2d 1095 (1993); *Roller v. Stonewall Ins. Co.,* 115 Wn.2d 679, 682, 801 P.2d 207 (1990).

■ ■ Washington has a strong public policy, both legislative and judicial, to protect innocent victims from uninsured or underinsured motorists. In *Clements v. Travelers Indem. Co.,* 121 Wn.2d 243, 251, 850 P.2d 1298 (1993), this court explained:

> The UIM statute does not contain a 'legislative intent' section, but this court has consistently stated that the Legislature enacted the UIM statute to increase and broaden the protection of members of the public who are involved in automobile accidents. This legislative purpose 'is not to be eroded . . . by a myriad of legal niceties arising from exclusionary clauses. RCW 48.22.030 should be read, therefore, to declare a public policy overriding the exclusionary language so that the intendments of the statute are read into and become part of the contract of insurance.' The UIM statute 'is to be liberally construed in order to provide broad protection against financially irresponsible motorists.'

(Footnotes omitted.) *See also Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 207-08, 643 P.2d 441 (1982);

*Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 333, 494 P.2d 479 (1972).

At the same time, the purpose of tying UIM coverage to liability coverage is to allow the insurer to collect a premium on the additional risks associated with uninsured or underinsured motorists. *Grange Ins. Ass'n v. MacKenzie*, 103 Wn.2d 708, 712, 694 P.2d 1087 (1985); *see also Anderson v. American Economy Ins. Co.*, 43 Wn App. 852, 858, 719 P.2d 1345 (1986). The owned-vehicle exclusion at issue here is intended to prevent an insured from receiving UIM coverage on an uninsured vehicle by virtue of having purchased a policy for another vehicle. *See MacKenzie*, 103 Wn.2d at 712.

In construing insurance contracts, our principal function is to determine the parties' intent by examining the contract as a whole. *See, e.g., Truck Ins. Exch. v. Rohde*, 49 Wn.2d 465, 469, 303 P.2d 659 (1956); *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 340, 738 P.2d 251 (1987). The insurance policy must be given a fair, reasonable, and sensible construction as would be given by an average insurance purchaser. *Jerome*, 122 Wn.2d at 160; *Eurick*, 108 Wn.2d at 341. It must not be given a "strained or forced construction" that would lead to absurd results. *Eurick*, 108 Wn.2d at 341 (quoting *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986)).

We apply the following rules of construction to aid in determining the parties' intent: (1) exclusionary clauses are to be construed strictly against the insurer, *see, e.g., Eurick*, 108 Wn.2d at 340-41, and (2) clear policy language must be enforced as written; no ambiguity may be created where none exists. *See, e.g., Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988).

We note that the language of the "owned-vehicle" exclusion at issue here is derived verbatim from RCW 48.22.030(2). This provision requires all insurers to make UIM coverage available to Washington policyholders, but

allows an exclusion for those accidents that occur "while operating or occupying a motor vehicle owned . . . and which is not insured under the liability coverage of the policy." RCW 48.22.030(2).

In this case, if Henault was "occupying" her uninsured motorcycle at the time of the second impact, the "owned-vehicle" exclusion would apply to preclude UIM coverage. The question to be decided is whether the average insurance purchaser would reasonably conclude that Henault was "occupying" her motorcycle when she was struck by an uninsured motorist as she lay in the roadway after having been ejected from her motorcycle in an earlier collision.

In *Farmers Ins. Co. v. Clure*, 41 Wn. App. 212, 702 P.2d 1247 (1985), the court of appeals interpreted the term "occupying" in the context of the owned-vehicle exclusion at issue here. In *Clure*, the insureds' son sought UIM coverage for injuries sustained to the left side of his body, which hit the ground when he was thrown from his motorcycle, but not for injuries sustained to the right side of his body, which was struck by the vehicle while he was riding the motorcycle. As in this case, the insurer brought a declaratory judgment action, arguing, inter alia, that the owned-vehicle exclusion precluded coverage for injuries sustained while "occupying" an owned, but not insured vehicle. The insureds responded that the absence of "proximate cause" language, such as "injuries sustained during an accident," required the conclusion that the exclusion only applied to those injuries sustained while in direct, physical contact with the vehicle. *Clure*, 41 Wn. App. at 215.

In concluding that the exclusion applied, the court of appeals held that a fair and ordinary meaning of the phrase "bodily injury while occupying" included those injuries which "directly result[ed]" from being thrown from a motorcycle during a collision. *Clure*, 41 Wn. App. at 215-17. The court reasoned that the average insurance purchaser "would not reasonably conclude that the exclusion from coverage was merely dependent upon the fortu-

itous circumstance that a portion of his or her body remained in physical contact with the motorcycle at the precise moment of injury." *Clure*, 41 Wn. App. at 217. The court also observed that to hold otherwise would render the exclusion "virtually meaningless" and would "alter the nature of the insurer's risks by factors not contemplated in the computation of premiums." *Clure*, 41 Wn. App. at 217.

It is Mid-Century's position that, in view of the purpose behind the statutorily authorized owned-vehicle exclusion, the average insurance purchaser would reasonably conclude that Henault was "occupying" her motorcycle. Relying on *Clure*, Mid-Century contends that any injuries Henault sustained as a result of the second impact directly related to one risk — that of riding an uninsured motorcycle.

Unlike the situation in *Clure*, however, Henault does not seek coverage for injuries sustained when she was thrown to the pavement in the first collision with Curry. Rather, she seeks coverage for injuries she sustained when she was struck by Benton as she lay in the roadway sometime *after* having been ejected from her motorcycle in the first collision. It is Henault's position that at the time of the second impact she was no longer "occupying," i.e., "in, on, getting into or out of" her motorcycle.

■ We agree with Henault. The policy, which Mid-Century itself drafted, unambiguously defines "occupying," as "in, on, getting into or out of" a motor vehicle. Given this unambiguous definition, it cannot be said that the average insurance purchaser would reasonably conclude that Henault was "occupying" her uninsured motorcycle under the circumstances presented here. On the contrary, it is reasonable to conclude that when the second impact occurred, Henault, who had been lying in the roadway for an unspecified period of time, clearly was not "in, on, getting into, or getting out of" her motorcycle

and therefore she was not "occupying" it.[2] We hold therefore that Henault was not "occupying" her owned, but not insured, motorcycle when she was struck by an uninsured motorist as she lay in the roadway after having been ejected from her motorcycle in an earlier collision.

Our holding advances the purpose behind the UIM statute, which is to broaden insurance protection for those injured in accidents involving uninsured or underinsured motorists. *See Clements*, 121 Wn.2d at 251. It is also consistent with the general principles of liberally construing the UIM statute in favor of coverage and construing policy exclusions against the insurer. *Clements*, 121 Wn.2d at 251; *Eurick*, 108 Wn.2d at 340-41.

Finally, contrary to Mid-Century's contentions, our holding does not conflict with prior decisions of this court, the court of appeals, or other jurisdictions. Having already explained and distinguished *Clure*, we first address our decision in *Eurick*, 108 Wn.2d 338. In that case, the insureds' son was killed while riding as a motorcycle passenger. The insureds' policy excluded coverage for injuries sustained "while operating, occupying or using a motorcycle." *Eurick*, 108 Wn.2d at 340. The insureds then sought to recover whatever claims they had as the decedent's parents under RCW 4.24.010, including the decedent's medical expenses, loss of services and support, loss of love and companionship, and destruction of the parent-child relationship. The insureds argued that the exclusion did not apply to them because they were not "occupying" the motorcycle and that their claims were distinct and "nonderivative" from those of the decedent. *Eurick*, 108 Wn.2d at 341. The court, viewing the exclusion as a reasonable insurance purchaser would, held that "the clear intent of the contract was to exclude from the set of risks that . . .

---

[2]Accordingly, we see no reason to resort to a factor-based test to determine when a person is "getting out of" a vehicle as Mid-Century advocates. *See Rau v. Liberty Mut. Ins. Co.*, 21 Wn. App. 326, 585 P.2d 157 (1978); *see also Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 801 P.2d 207 (1990); *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 762 P.2d 1141 (1988); *Cherry v. Truck Ins. Exch.*, 77 Wn. App. 557, 892 P.2d 768 (1995).

[the insurer] would insure against, and that respondents would pay premiums for, *all* claims arising from injuries sustained by a motorcycle driver or rider." *Eurick*, 108 Wn.2d at 342.

The issue presented in *Eurick* is not the one we face. There, the policy exclusion unequivocally precluded coverage for the injuries sustained by their son, the driver; hence the parents' claim based on his injuries was excluded as well. In this case, the policy exclusion does *not* unequivocally preclude coverage for injuries sustained by the driver. Rather, as the foregoing analysis demonstrates, unlike *Eurick*, it is by no means certain that the average insurance purchaser would reasonably conclude under these circumstances that coverage is precluded under the owned-vehicle exclusion.

Mid-Century also contends that our holding conflicts with *Truck Ins. Exch. v. Rohde*, 49 Wn.2d 465, 303 P.2d 659 (1956) where the insured drove his vehicle over the center line and collided one after the other with three motorcycles. The court held that this chain of events constituted one accident or occurrence, rather than three separate accidents. *Rohde*, 49 Wn.2d at 471-72. The court reasoned that "[t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." *Rohde*, 49 Wn.2d at 471.

Not only was the issue different in *Rohde*, but it was also factually distinguishable from this case. Unlike *Rohde*, the sequence of events which led up to Henault's being struck by Benton in the second impact was not uninterrupted. Although the record does not indicate precisely how long Henault lay in the roadway after the first impact, it is clear that sufficient time had passed for Butler to arrive at the scene, see Henault lying in the roadway, slow down, and stop before the second impact.

Finally, Mid-Century relies upon *Dunlap v. United States Auto. Ass'n*, 470 So. 2d 98, 99 (Fla. Dist. Ct. App. 1985) in which the court denied personal injury protection coverage to an insured who had been ejected from a

motorcycle and then immediately run over by a taxi. The *Dunlap* court held that the insured was not a "pedestrian," i.e., a person not "occupying" a motor vehicle, because the concept of "occupying" extended to one who is run over by a motor vehicle "immediately following" ejection from the vehicle. *Dunlap*, 470 So. 2d at 99. In so holding, the *Dunlap* court applied the rule that an insured continues "occupying" the motor vehicle from which he or she was ejected unless the facts demonstrate that the "occupancy" has terminated and a new activity commenced before the second impact. *Dunlap*, 470 So. 2d at 99.

We decline to follow *Dunlap* for three reasons. First, *Dunlap* is factually distinguishable because Henault was not struck *immediately* after she was ejected from her motorcycle in the first collision. Second, as discussed above, Henault was not "occupying" her motorcycle according to the unambiguous definition of that term as drafted by Mid-Century. Third, we consider it significant that the *Dunlap* court based its holding primarily upon the reasoning of *United States Fidelity & Guar. Co. v. Daly*, 384 So. 2d 1350 (Fla. Dist. Ct. App. 1980). Yet, the *Daly* court interpreted the term "occupying" to *provide* coverage, not *deny* coverage as in *Dunlap*.

In sum, we conclude that Henault was not "occupying" her uninsured motorcycle when she was struck by an uninsured motorist as she lay in the roadway after having been ejected from her motorcycle in an earlier collision. We therefore affirm the court of appeals and reverse the trial court's order granting summary judgment to Mid-Century on the issue of whether the owned-vehicle exclusion applies to preclude UIM coverage.

DURHAM, C.J., and DOLLIVER, SMITH, JOHNSON, and MADSEN, JJ., concur.

TALMADGE, J. (dissenting) — I dissent. The purpose of Washington's uninsured/underinsured motorist (UIM) statute is to provide insurance coverage to responsible

drivers against uninsured and underinsured drivers, but it does not require insurers to provide coverage for free. The majority opinion obliges Mid-Century to provide UIM coverage for Henault's operation of a motorcycle for which she failed to purchase UIM coverage, or any liability insurance at all. The injuries Henault sustained when struck by an uninsured motorist are not covered under the UIM provisions of Henault's Mid-Century automobile liability insurance policy because the policy's "owned-vehicle" exclusion precludes coverage.

## FACTS

Henault failed to purchase insurance for her motorcycle. Henault was riding her uninsured motorcycle when the accident occurred. She was first struck by a vehicle driven by Curry. Henault was thrown from her motorcycle. While lying in the road she was struck by Benton, the uninsured. Henault then brought suit under the Mid-Century policy which she had purchased to cover her pickup truck.[3]

Mid-Century's UIM coverage stated it would "pay all sums which an uninsured person is legally entitled to recover as damages from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by the insured person." The policy also excluded UIM coverage for bodily injury sustained "[w]hile occupying a motor vehicle owned or available for regular use by you or a family member for which insurance is not afforded under the liability coverage of this policy."

## DISCUSSION

The Mid-Century owned-vehicle exclusion is expressly sanctioned by the Legislature. RCW 48.22.030(2) states that insurers are not required to provide coverage for motorcycles, or for any owned, but uninsured, vehicles of the insured. Such statutorily authorized policy exclusions

---

[3]It is noteworthy that Henault originally claimed coverage under the Personal Injury Protection (PIP) portion of the Mid-Century policy. She has abandoned that claim on appeal.

allow the insurer to prevent "an increase in the quantum of risk without a corresponding increase in the premium." *Grange Ins. Ass'n v. MacKenzie*, 103 Wn.2d 708, 712, 694 P.2d 1087, 1089 (1985). The purpose behind the owned-vehicle exclusion is to prevent an insured from receiving free UIM coverage on an uninsured vehicle by virtue of having purchased a policy for another vehicle. Majority at 213. While the UIM statute is to provide protection against financially irresponsible motorists, the Legislature did not intend the statute to protect one uninsured motorist from another uninsured motorist, or to reward the vehicle owner who irresponsibly fails to insure a vehicle.[4]

The majority determines that under the definition of "occupying" in the Mid-Century policy,[5] the average insurance purchaser would not conclude Henault was occupying her uninsured motorcycle under the facts of the case. Recognizing that *Farmers Ins. Co. v. Clure*, 41 Wn. App. 212, 702 P.2d 1247 (1985) and *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 738 P.2d 251 (1987) suggest otherwise, the majority attempts to distinguish those cases. The majority ignores the common sense meaning of the owned-vehicle exclusion and concludes Henault was not occupying her uninsured motorcycle at the time of the second impact and is therefore covered under the policy's UIM provision. Any insurance purchaser would concede on the language of the exclusion that the accident happened precisely because Henault rode her uninsured motorcycle and her injuries arose from that use of the motorcycle. Moreover, the average insurance purchaser would not believe the UIM provision in a policy for a pickup truck covers

---

[4]*See Herrick v. Liberty Mut. Fire Ins. Co.*, 202 Neb. 116, 118, 274 N.W.2d 147 (1979) ("[a]n overriding public policy of protecting an owner-operator who inexcusably has no applicable bodily injury liability coverage is not presently discernible"). *See also Fleming v. Grange Ins. Ass'n*, 73 Wn. App. 570, 576, 870 P.2d 323 ("while the public policy underlying Washington's UIM statute is to maximize the protection afforded by insurance coverage, it does not require insurance companies to provide the coverage for free"), *review denied*, 125 Wn.2d 1002 (1994); *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 88, 794 P.2d 1259 (1990).

[5]The policy defines "occupying" as "in, on, getting into or out of" a motor vehicle.

injuries from an accident while riding an uninsured motorcycle.

The majority reaches its conclusion with a strained interpretation of the word "occupying" in the owned-vehicle exclusion. Under its interpretation, the exclusion is limited to injuries that derive from some unspecified physical proximity between the driver and the owned vehicle, in this case, a motorcycle. The majority's analysis was rejected in *Clure* and *Eurick*.

The court of appeals decision in *Clure* involves facts nearly identical to those in this case. The insured's son sought UIM coverage for injuries to the left side of his body which were sustained when he hit the ground after being thrown from his motorcycle. The motorcycle was not an insured vehicle under the applicable Farmers automobile liability policy. Farmers denied coverage based on the owned-vehicle and motorcycle exclusions contained in the policy. The court held "the exclusions for 'occupying' a noninsured vehicle or motorcycle are intended to relate to injuries sustained in an accident which directly result from being 'in, on, getting into or out of' a noninsured vehicle or motorcycle." *Clure*, 41 Wn. App. at 215-16. The court refused to narrowly construe "occupy" and render the exclusionary clauses meaningless. The court also stated a narrow construction would "alter the nature of the insurer's risk by factors not contemplated in the computation of premiums." *Id.* at 217. This reasoning, which employs a causal test to isolate risks resulting from use of motorcycles, is persuasive here.

The majority attempts to distinguish *Clure* by noting Henault does not seek coverage for injuries sustained when she was thrown to the pavement in the first collision, but rather she seeks coverage for the injuries sustained in the second impact. The majority concludes that at the time of the second impact, Henault was no longer occupying her motorcycle. This analysis defies common sense. The *Clure* court determined that a practical interpretation of the exclusionary clauses was necessary,

reasoning that the average insurance purchaser "would not reasonably conclude that the exclusion from coverage was merely dependent upon the fortuitous circumstance that a portion of his or her body remained in physical contact with the motorcycle at the precise moment of injury." *Clure*, 41 Wn. App. at 217. The *Clure* court was correct. The majority's literal approach to the construction of "occupying" and its definition "in, on, getting into or out of" circumvents the purpose of the owned-vehicle exclusion. Henault's injuries directly resulted from her use of her uninsured motorcycle.

In *Eurick*, the parents purchased an automobile insurance policy for themselves and their children. A child was killed while riding as a motorcycle passenger. The Pemco policy contained a motorcycle exclusion: "[t]his policy does not apply . . . to bodily injury to an insured while operating, occupying or using a motorcycle." *Eurick*, 108 Wn.2d at 340. The parents sought coverage under their policy's UIM provision for their medical expenses, loss of services and support, and loss of love and companionship. RCW 4.24.010.

We held that the UIM statute permitted insurers to exclude losses by persons "operating or occupying a motorcycle" from their mandatory UIM coverage. *Id.* at 342; RCW 48.22.030(2). We concluded that recognizing the parents' claim would "render the exclusion virtually meaningless":

> We believe that the clear intent of the contract was to exclude from the set of risks that Pemco would insure against, and that respondents would pay premiums for, *all* claims arising from injuries sustained by a motorcycle driver or rider. Recognition of the parents' claims would render the exclusion virtually meaningless. The only damages a parent *cannot* recover under RCW 4.24.010 appear to be the child's personal pain and suffering. If the parents' claims were allowed, the insurer would pay the bulk of the damages it would have paid had the child brought its own action. To allow the exclusion to be circumvented merely by the substitution of one insured for another on the claim form would be to suc-

cumb to a "forced" or "strained" interpretation totally at odds with the interpretation the average person would give the policy. The average policyholder would read the exclusion as a real — not an illusory — limitation on coverage.

*Id.* at 342. In effect, this court held that exclusionary language similar to that present in the Mid-Century policy must be interpreted to exclude all claims *arising out of the excluded event*, i.e., the operation of the uninsured motorcycle.[6]

## CONCLUSION

Mid-Century's owned-vehicle exclusion should be interpreted to achieve the purpose of RCW 48.22.030(2). Henault was not covered by Mid-Century's UIM coverage in her pickup truck's policy for the loss arising out of her use of the uninsured motorcycle. To hold otherwise means Henault gets UIM coverage for which she did not pay a premium. I doubt the average insurance purchaser would conclude that coverage was proper for injuries sustained by a person as a direct result of riding on a motorcycle that person failed to insure. Though I sympathize with Henault's injuries, she may not hold Mid-Century responsible for her loss when she failed to insure her motorcycle and to procure UIM coverage.

[6]The reasoning in *Eurick* is consistent with the general principle in many insurance cases that where an unbroken causal chain of events produces the loss, a court must look to the preponderant or efficient cause of the loss, i.e., the one that set the others in motion, to determine if there is coverage or if an exclusion applies. *Hocking v. British Am. Assurance Co.*, 62 Wash. 73, 75, 113 P. 259 (1911); *Graham v. Public Employees Mut. Ins. Co.*, 98 Wn.2d 533, 537-38, 656 P.2d 1077 (1983) (the "immediate physical cause analysis . . . should be discarded"; jury could find Mt. St. Helens eruption was the efficient proximate cause of the mudflows causing the loss); *Villella v. Public Employees Mut. Ins. Co.*, 106 Wn.2d 806, 815, 725 P.2d 957 (1986); *Safeco Ins. Co. of Am. v. Hirschmann*, 112 Wn.2d 621, 773 P.2d 413 (1989); *McDonald v. State Farm Fire & Casualty Co.*, 119 Wn.2d 724, 731, 837 P.2d 1000 (1992) (when a peril insured against sets an unbroken sequence of causes into motion, the resulting injury or loss is covered even though other events in the causal chain may have been excluded); *Krempl v. Unigard Sec. Ins. Co.*, 69 Wn. App. 703, 705, 850 P.2d 533 (1993) (when an excluded peril sets in motion an unbroken chain of events resulting in a loss, the loss arises out of the excluded peril and therefore was not covered even though the last link in the causal chain was a covered peril).