

2016 AUG 29 AM 10: 47

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROGER RESSMEYER, | ) | No. 74057-1-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| STEVEN MARSHALL and DEANNA MARSHALL, a.k.a. DEANNA NELSON, a married couple, | ) ) ) ) | FILED: August 29, 2016 |
| Appellants. | ) | |

APPELWICK, J. — Ressmeyer sued the Marshalls, his downhill neighbors, for specific performance of a covenant that requires landscaping to be maintained at a height no greater than the nearest roof peak/ridge. The Marshalls argued that because Ressmeyer's house was the closest structure to the vegetation, their trees could grow as tall as the roof peak of his house. The trial court granted summary judgment in favor of Ressmeyer, concluding that the provision pertains to the nearest roof peak/ridge on the same property as the vegetation. We affirm.

## FACTS

Steven Marshall and his wife, Deanna Marshall, a/k/a Deanna Nelson, (the Marshalls) own a home on Mercer Island. They bought the lot in 2001, when it was undeveloped. The Marshalls' house was finished in 2004.

Roger Ressmeyer owns an adjacent lot that is directly uphill from the Marshalls' lot. He purchased his home in 1996. The Marshalls' property stands between Ressmeyer's home and Lake Washington.

Both the Marshalls' property and Ressmeyer's property are part of the Mariner Cove subdivision. The developer that subdivided this property, Odegard Development Corporation, prepared the declaration of covenants, conditions, and restrictions of Mariner Cove (CC&Rs). The CC&Rs set out rules and regulations for the lots in Mariner Cove.

"Article III, Section 2" of the CC&Rs is titled "Maintenance of Landscaping and Trees." It provides,

> To protect the outlook from each lot, and to maintain the overall desirability of the subject properties, all owners are required to maintain visible landscaping in a neat and sightly condition. Planted trees (not including the natural large trees on the plat), shrubs, and/or hedges must be maintained at a height equal to or lower than the nearest roof peak/ridge height, unless the owner has secured an instrument allowing a deviation from this restriction signed by all owners of Mariner Cove lots uphill of the lot/owner seeking deviation.

This provision has caused an ongoing dispute between the Marshalls and Ressmeyer.

The Marshalls have created an approximate visual representation of the properties in the subdivision, which is included below. The estimated elevations

in this figure list the Marshalls' property—6934 96th Avenue SE—as 56.5 feet,[1] and the Ressmeyer's property—located at 6930 96th Avenue SE—as 87 feet.



During the construction of their home, the Marshalls planted a row of bushes and other vegetation one to two feet away from the western property line that they share with Ressmeyer (the hedge row). The hedge row is closer to Ressmeyer's house than it is to any structure on the Marshalls' property. The Marshalls intended the hedge row to provide shade and privacy, and to be aesthetically pleasing.

As the hedge row grew, Ressmeyer informed the Marshalls that they were required to trim their vegetation so that it was no taller than the roof peak/ridge of their residence. This would require the hedge row to be maintained at approximately six to seven feet high, as measured from the ground near the

---

[1] The Marshalls also note that if a structure were placed at a 20 foot setback on their property, it could have been up to 75 feet in elevation.

property line. Initially, the Marshalls complied. Then, in 2011, the relationship between the Marshalls and Ressmeyer started to break down. The Marshalls stopped trimming the hedge row, although they allowed Ressmeyer to do so at his own expense. In 2013, the Marshalls told Ressmeyer that they would build another structure on their property that would permit them to grow even taller vegetation, thereby blocking Ressmeyer's view.

On August 21, 2014, Ressmeyer filed a complaint against the Marshalls. He sought a declaratory judgment that the nearest roof peak means the nearest roof peak of the primary residence on the same lot as the vegetation, an order of specific performance requiring the Marshalls to trim the hedge row, and an injunction preventing the Marshalls from building additional structures for the purpose of creating a higher roof ridge line.

The Marshalls counterclaimed, seeking a declaratory judgment that they may allow their vegetation to grow as tall as Ressmeyer's roof peak, an injunction requiring Ressmeyer to comply with the CC&Rs, and damages for Ressmeyer's breach of the CC&Rs. Both parties moved for summary judgment

The trial court heard argument on the motions on June 12, 2015. The court concluded that the language in Article III, Section 2 of the CC&Rs pertaining to the nearest roof peak/ridge refers to the nearest roof peak/ridge on the same property as the vegetation, even if a structure on a different property is closer.[2] The court

---

[2] Ressmeyer argued that the meaning of this language should be established through reference to extrinsic evidence: the declaration of David Odegard, who was vice president of Odegard Development Corporation when the CC&Rs were drafted. However, the trial court did not refer to this declaration in

4

held that the purpose of this provision is to preserve each lot's view of Lake Washington, and that interpreting it to permit vegetation to grow as high as the roof peak of an uphill neighbor would make no common sense. As a result, the trial court granted Ressmeyer's motion for summary judgment. The Marshalls appeal.

## DISCUSSION

When a party appeals from a summary judgment, this court engages in the same inquiry as the trial court. Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). Summary judgment is proper when the pleadings, affidavits, depositions, and admissions show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; CR 56(c). Summary judgment should be granted only if, based on all the evidence, a reasonable person could reach only one conclusion. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

The interpretation of a restrictive covenant is a question of law. Wilkinson v. Chiwawa Cmtys. Ass'n, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). We apply the principles of contract interpretation. Id. When this court interprets restrictive covenants, the primary objective is to determine the intent of the parties who established the covenants. Riss v. Angel, 131 Wn.2d 612, 621, 934 P.2d 669 (1997). The court construes the document in its entirety, and gives language its ordinary and common meaning. Id.

---

determining the meaning of the covenant. Nor do we consider Odegard's declaration.

5

The Marshalls argue that Article III, Section 2 can be interpreted only as tying the maximum vegetation height to the roof peak of whatever structure happens to be nearest. They assert that any other interpretation would require this court to read words into the CC&Rs.

Article III, Section 2 begins by stating the purpose of the provision: "To protect the outlook from each lot, and to maintain the overall desirability of the subject properties." Webster's defines "outlook" as "a view from a particular place." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1602 (2002). The Marshalls contend that "outlook" is a place-centric word that is focused on the place from where a thing is being observed, not the thing itself. Thus, they argue that "outlook" is the viewpoint, not the view. Alternatively, they contend that even if "outlook" does mean view, it is not limited to water views and could just as easily mean landscape views.

It is common sense that a lakefront property is more desirable when it has a view of the lake. See Wimberly v. Caravello, 136 Wn. App. 327, 337, 149 P.3d 402 (2006) (noting that the scenic location and views of a residential community overlooking Lake Roosevelt are an intrinsic part of the aesthetic and monetary value of the lots). The value of the outlook is in the view. The CC&Rs call for landscaping to be maintained to protect the overall desirability of all the properties in the subdivision. It would be inconsistent with this provision to permit landscaping to grow so tall that it completely blocks the view from the uphill neighbor's outlook. And, if the word "outlook" was intended to mean a view of the landscaping, as the Marshalls suggest, there would be no need to require landscaping to be

6

maintained at a particular height, because the landscaping itself would be the protected view.

Article III, Section 2 requires owners "to maintain visible landscaping in a neat and sightly condition." The Marshalls argue that this requirement further supports their interpretation. They argue that their obligation is to maintain "neat and sightly" landscaping, not to protect Ressmeyer's outlook. "Neat and sightly" landscaping, they argue, means landscaping that is aesthetically pleasing and that provides privacy.[3] They are correct about the affirmative obligation for maintaining visible landscaping. However, the language does not purport to relieve any other obligation in the covenants, including protection of outlooks. And, nothing in the landscaping portion of the covenant makes any reference to protecting the privacy of any owner.

Article III, Section 2 also contains an exception to the requirement that vegetation be maintained at a height no greater than the nearest roof peak/ridge, stating that deviation is allowed if the owner obtains an instrument signed by the owners of all uphill lots. An owner would need a deviation only to grow vegetation that is taller than the nearest roof peak. There would be no need to require the closest uphill neighbor's consent to deviate from the landscaping restrictions if the nearest roof peak could refer to that neighbor's roof peak. Even though only

---

[3] The Marshalls view the hedge row as critical to maintaining their privacy. They wish to grow trees that are tall enough to block Ressmeyer from seeing into their yard and back windows. Webster's offers multiple definitions of "neat," but none of them mentions privacy. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1510 (2002). The only definition relevant in this context is "orderly, tidy." Id. And, Webster's provides several definitions of "sightly:" "acceptable or pleasing to the sight: decent in appearance;" "affording a fine view." Id. at 2115.

7

neighbors located further uphill would be affected by the taller vegetation, because the vegetation would already block the view of the immediate uphill neighbor, Article III, Section 2 explicitly requires the deviation to be evidenced by a written instrument signed by all uphill neighbors.

The Marshalls' interpretation of the nearest roof peak/ridge language cannot be squared with the rest of Article III, Section 2. The Marshalls' interpretation would give downhill neighbors the right to completely obstruct the view of their uphill neighbors. Conversely, if the downhill neighbor's roof peak was closer to the planting area than the owner's roof peak, it could prevent uphill neighbors from having plants at all. It also would all but eliminate the need for the provision allowing a deviation from the height restriction.

This court does not give contracts a strained or forced construction that would lead to absurd results.[4] Mid-Century Ins. Co. v. Henault, 128 Wn.2d 207, 213, 905 P.2d 379 (1995). The only reasonable interpretation of the nearest roof peak/ridge language in Article III, Section 2 is that it refers to the nearest roof peak/ridge on the same property as the vegetation.

---

[4] At oral argument, the Marshalls recognized that their interpretation arguably leads to an absurd result. However, they argued that Ressmeyer's interpretation leads to an equally absurd result, because it would limit the Marshalls' vegetation to three to four feet in height. We do not agree that Ressmeyer's interpretation creates an absurd result. Common sense dictates that a provision pertaining to the maintenance of landscaping and vegetation would set limits for vegetation. That the Marshalls are unsatisfied by the aesthetics of vegetation three to four feet in height does not make this covenant absurd.

We hold that the trial court did not err in granting summary judgment in favor of Ressmeyer.

We affirm.

WE CONCUR:

Leppelwick, J.

Leach, J.